Coos,
May 2, 1944. } No. 3476.

CARL H. RICKLE *v.* WYOMING VALLEY PAPER MILLS & a.

192

*Hinkley & Hinkley* (*Mr. Irving A. Hinkley* orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Eliot U. Wyman* orally), for the defendants.

MARBLE, C. J.   In an equitable proceeding for the cancellation of a particular document on the ground of mistake, the rule that parol evidence is inadmissible to vary or contradict the terms of a written instrument does not obtain.   *McIsaac* v. *McMurray,* 77 N. H. 466, 469.

"Cancellation is appropriate when there is an apparently valid written agreement or transaction embodied in writing, while in fact, by reason of a mistake of both or one of the parties, either no agreement at all has really been made, since the minds of both parties have failed to meet upon the same matters, or else the agreement or transaction is different, with respect to its subject-

matter or terms, from that which was intended." Pom. Eq. Jur. (5th *ed.*), *s.* 870.

So far as releases from personal injury claims are concerned, it is generally held that "where the parties are regarded as having contracted with reference to future possibilities, and there was no fraud or other inequitable conduct by the releasee," a release "cannot be avoided on the ground of mistake merely because the injuries prove more serious than the releasor at the time of executing the release believed them to be." Pom. Eq. Jur. (5th *ed.*), *s.* 871d.

Defendants' counsel maintain that this rule is peculiarly applicable to the present case, since the only mistake which the parties here made related to the duration of the plaintiff's disability: his recovery was retarded by a physical condition of his veins not caused by the accident, and the extent as well as the nature of the bruise and resulting ulcer was fully known. These facts, they assert, distinguish the case from the cases of *McIsaac* v. *McMurray, supra,* and *Poti* v. *Company,* 83 N. H. 232.

No opinion regarding the correctness of this contention need be expressed, however, since the evidence unquestionably sustains the conclusion that the parties did not intend the first release to be final and that the plaintiff signed the second release in the belief that it did not deprive him of his right to further compensation if his cure was not complete within the time predicted. Such a belief on his part could be deemed reasonable in view of the fact that the defendants treated the first release as though it were merely a "settlement receipt" of the type described in the case of *Bunker* v. *Company,* 84 N. H. 84, 87, 88.

The releases are in printed form. They are exactly alike, and each comprises over three hundred words. Most of the phrases are technical, and their precise legal import would not, in all probability, be apparent to a person in the plaintiff's position. Each document was executed informally with the adjuster as the only witness to the plaintiff's signature. The plaintiff did not acknowledge before a justice of the peace or notary public (as the form of the release required) that he understood the instrument to be a "full release and settlement."

Although the releases recite that the plaintiff elects not to accept the workmen's compensation benefits to which he is entitled, those benefits are dealt with, and the sums paid the plaintiff for lost wages are determined in accordance with the compensation rate. The adjuster stated in entire frankness that the paper mills wanted

to give the plaintiff "all the breaks possible" and that it was his original intention to make the plaintiff "whole for his injury," that he intended the first release to be final only in case the plaintiff had no "further trouble," and that when further trouble developed he reopened the case.

With reference to the second release, he testified: "The second time I was more intent on obtaining a binding release. . . . I told Mr. Rickle the purpose of this release was to be final. . . . I also pointed out that we couldn't continue to reopen the case . . . and that he would have to take his own chances on a recovery."

No doubt the adjuster had in mind the distinction mentioned in the case of *Poti* v. *Company*, 83 N. H. 232, 233, 234, between the "payment of damages" and the "purchase of peace"; for, as he understood the legal situation, the first settlement was not final, since the consideration was "intentionally figured" at the "compensation rate," while the second settlement was binding because it was made "on Mr. Rickle's own figure."

But, according to the plaintiff's testimony, which the Court was entitled to believe, the adjuster said nothing about reopening the case but merely told him he "couldn't have any compensation" unless he signed another release. The plaintiff testified: "I was under compensation then. We did have a talk there about if anything should develop in my leg and so on like that, and Mr. Daniels [the adjuster] encouraged me that if the doctor said it would be all right there was no question but what it would be all right." On being asked the question, "And you understood that this was all the money that you were going to get, didn't you?" he answered, "No, I didn't understand it that way."

There can be no question but that the first release was not intended to be binding if the plaintiff's injuries continued for a longer period than was contemplated, and the second release did not differ in form or execution from the first. The sum of $200 paid the plaintiff on March 21 was within two dollars of the exact amount due him as compensation for lost wages. Under all the circumstances it was natural for him to believe that he was still "under compensation" and to assume that the signing of the second release did not preclude him from getting more money if the doctor's opinion regarding his early recovery proved again to be incorrect.

It does not matter that his mistake concerning the effect of the release was one of law. It cannot be "separated from the facts in which it is involved and upon which it depends" and is therefore to be dealt with as a mistake of fact. Pom. Eq. Jur. (5th *ed.*),

*s.* 849. And since it could be found that this mistake was occasioned by the misleading conduct of the insurance company the order of the Presiding Justice setting aside the releases must be affirmed, even though the conduct of the insurance company was not "intentionally misleading." Pom. Eq. Jur. (5th *ed.*), *s.* 847.

The rule is thus stated in the second headnote to the case of *Wilding* v. *Sanderson* [1897] 2 Ch. 534: "A written contract cannot be set aside merely because one of the parties to it put an erroneous construction on the words in which it was expressed; but this principle does not apply to a case where a mistake by one of the parties as to the meaning of the words used has been induced, however innocently, by the other party." See *Carpenter* v. *Company*, 191 Mich. 45, 53.

The conclusion we have reached makes it unnecessary to consider the plaintiff's other contentions.

*Exception overruled.*

All concurred.