Hillsborough,
Dec. 2, 1947. } No. 3684.

NELLIE S. BEE *v.* CHICOPEE MFG. CORP. OF N. H.

*J. Morton Rosenblum* (by brief and orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Booth* orally), for the defendant.

DUNCAN, J. In support of her general exceptions to the Trial Court's findings, the plaintiff has argued that the evidence compels findings directly contrary to those made. The defendant has devoted its argument to the proposition that the findings made are warranted by the evidence. If the defendant's position is correct, the plaintiff's argument necessarily fails. The sufficiency of the exceptions not having been questioned, the case is considered upon its merits. See, *Plante* v. *Shortell*, 92 N. H. 38, 40; *Eastman* v. *Weisman, ante*, 253.

Following the accident, the plaintiff continued to work until October 10, 1944, with intermittent interruptions after April, 1944. When her condition prompted her to leave work, she elected to take compensation, and on October 11 was paid $388.64 for twenty-eight weeks incapacity, at a weekly rate of $13.88. On the following November 16, she submitted to an operation for removal of her coccyx. On December 21, 1944, the release in question was given, in consideration of the payment to the plaintiff of an additional $400, and the insurer's agreement to pay medical bills not exceeding $300, an agreement subsequently performed by the payment of bills totalling $275.50.

Prior to the execution of the release, the plaintiff had been assured by her attending physician that the injuries sustained in the accident had been cured by the operation, and that she would probably be able to resume work in two or three months. The insurance adjuster testified that the physician had made a similar statement to him. It appeared from the plaintiff's testimony that up to the time of the trial in December, 1946, she had been unable to resume work. Through an expert witness, she introduced evidence that she was suffering from a permanent nerve involvement resulting either from the accident or the removal of her coccyx.

The plaintiff argues that the evidence necessarily brings the case within the rule of *McIsaac* v. *McMurray*, 77 N. H. 466, and *Poti* v. *Company*, 83 N. H. 232, permitting cancellation of a release given upon a mutual mistake as to the nature or extent of the releasor's injury. The argument overlooks the fact that the burden of proof is upon the plaintiff, and that the evidence tending to show that the parties were unaware of the full extent and true nature of the disability consisted entirely of testimony which the Court was at liberty to disbelieve. The implication from the findings, that the plaintiff's injuries were not different from what the parties to the release understood them to be, is supported by evidence which negatived mistake in this regard. A finding of mistake as to the nature or extent of the injury was not compelled.

From the plaintiff's testimony that she was unable to resume work within the period suggested by her attending physician, it would follow that the latter was mistaken in his prognosis. But this conclusion would not necessarily require a finding of mistake on the part of the principals such as to invalidate the settlement, since they could be found to have recognized the possibility of error in the prognosis, and to have contracted with reference to this, as well as other uncertainties.

The adjuster testified that he explained to the plaintiff that the proposed settlement was sufficient, in case the doctor's estimate proved erroneous, to cover a longer period of disability. The plaintiff acknowledged that she did not then know when she would be able to return to work, although she "hoped" to do so by March 1. Since the compromise might be found to have been made with reference to a recognized risk of a longer period of convalescence, it need not now be invalidated because that risk became an actuality. *Cogswell* v. *Railroad*, 78 N. H. 379. To paraphrase *Churchill* v. *Company*, 86 N. H. 415, 418: "Having acted understandingly, the plaintiff cannot secure relief from the consequences of her action because she has concluded that her conduct was ill advised." See also, 12 C. J. S. 978, s. 27, b (1).

The Court's finding that "the parties intended the release of December 21, 1944, to be a final and full release of all claims, known or unknown, suspected or unsuspected" also bears upon the question of mutual mistake. It, in turn, was warranted by the evidence. The release, which the plaintiff read before execution, purported to be such a release as the Court found the parties intended it to be, and used the language incorporated in the finding. The adjuster testified that he proposed a settlement which should be "full and final," and by which the plaintiff should forego weekly compensation in favor of a lump sum settlement. While there was evidence that the plaintiff did not so understand it, there was also evidence that she did, and the draft which she accepted in payment, and read, plainly stated "Lump sum settlement" where the October draft had stated the period for which compensation was paid. The issue of the intent of the parties was one to be determined by the trier of the facts, whose determination supported by the evidence, is here final. From the finding made as to intent, it follows that there was no mistake of fact as to the plaintiff's prospect of recovery, material to the considerations prompting settlement. See, *McIsaac* v. *McMurray, supra*, 473.

Even if the parties had been found to have acted upon a mistaken

idea as to the probable duration of the plaintiff's disability, it does not follow that the plaintiff would therefore be entitled to relief. It has been frequently said that such a "mistake in prophecy," relating to future and not existing facts, of itself constitutes no ground for cancellation. "But a mistake in prophecy, or in opinion, or in belief relative to an uncertain future event, such as the probable developments from, quickness of recovery from, and the permanence of, a known injury, is not such a mutual mistake as will avoid the release." 53 C. J. 1212, 1213. *McIsaac* v. *McMurray, supra,* 475; *Poti* v. *Company, supra,* 234. See also, *Rickle* v. *Mills,* 93 N. H. 191, 193; Annotation, 117 A. L. R. 1022, 1024, *et seq.*

The exceptions to the findings that there was no mutual mistake of fact, and that the parties intended the release to be a full and final release of all claims, are overruled.

The exception to the finding that there was no fraud or misrepresentation on the part of the defendant, its agents or servants must also be overruled. If there was any evidence tending to show fraud or intentional misrepresentation on the part of the adjuster or the attending physician, it was not such as to compel a finding for the plaintiff. Any evidence tending to show innocent misrepresentation was opposed by evidence to the contrary, sufficient to warrant the findings made. The opinion of the physician that the plaintiff would be able to resume work in three months could be found to have been given in good faith, upon a basis of average experience in similar cases. It was given without knowledge of the proposed settlement. Moreover, the defendant was not necessarily to be held responsible for the doctor's representations, since he was not in the regular employ of either the defendant or its insurer. While his charge for services to the plaintiff was paid by the insurer, this was pursuant to the settlement with the plaintiff, except for $11 paid in early 1943.

It is argued that the weekly rate at which the plaintiff was entitled to receive compensation was misrepresented by the adjuster. The figure of $13.88 weekly, basis of the payment to the plaintiff in October, was arrived at by halving her average weekly earnings during the year preceding the accident. The plaintiff contends that the correct rate was one-half of her average weekly earnings for the year preceding total incapacity, amounting to $17.41.

The statute (R. L., *c.* 216, *s.* 22) provides that payment shall not exceed "fifty percent of [the] average weekly earnings as computed under section 20, I." Section 20, I, provides that in case of death, compensation shall be determined upon a basis of "average weekly

earnings . . . when at work on full time during the preceding year during which [the employee] shall have been in the employ of the same employer. . . . ''

The Trial Court ruled, subject to the plaintiff's exception, that the statute "cannot be construed to mean any other date than that of the accident." The ruling correctly construed the act. While the provisions of sections 20, I, and 22, are not as explicit as might be, as to whether the year preceding the accident or that preceding disability was intended, section 25 directs that regard shall be had to the difference between "average earnings . . . before the accident," and those after, and section 26, prescribing the limits of payments for partial incapacity also expressly refers to "the average weekly earnings . . . before the accident." *Cf.* also, *s.* 27. See, *Thomson* v. *Company*, 86 N. H. 436, 448, 449. There is no reason to believe that the period used to measure compensation for total incapacity was intended to be different from that made applicable to partial incapacity; or that the date of commencement of disability was intended by section 22, when the date of the accident was made controlling in other respects.

Examination of the context of the statute in its form before revision (Laws 1911, *c.* 163, *s.* 6 (2); Laws 1923, *c.* 91, *s.* 2), confirms the view that average weekly earnings during the year preceding the injury were intended by the provisions now found in revised form in section 22. *Abbott* v. *Company*, 80 N. H. 301; *Gagne* v. *Company*, 87 N. H. 163, 166. And as the ruling of the Presiding Justice points out, some significance may be attached to the fact that the statute has remained unchanged since the dissenting opinion in *Thomson* v. *Company*, cited above, expressing the view that "accident" as used in section 24 (now section 27) "must be construed to mean disability."

It follows that since the adjuster correctly computed the maximum rate at which the plaintiff was entitled to be compensated under the act, no misrepresentation was established in this regard. Nor did the evidence establish as a matter of law that misrepresentations were made in any other regard, or that the plaintiff was misled by what she was told. The record sustains the findings and ruling of the Trial Court, and they in turn warranted the order dismissing the plaintiff's bill.

*Exceptions overruled.*

BLANDIN, J., did not sit: the others concurred.