**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, a Pennsylvania corporation, Plaintiff,**

v.

**MEMORIAL HOSPITAL ASSOCIATION, a Wisconsin corporation, Reineman Hardware Co., Inc., a Wisconsin corporation, and John Brust and Paul Brust, individually and as co-partners doing business as Brust and Brust, Defendants.**

**No. 61–C–70.**

United States District Court
E. D. Wisconsin.

Nov. 18, 1963.

Kenneth L. Greenquist, Racine, Wis., for plaintiff.

Donald A. Butchart, Racine, Wis., for defendant Memorial Hospital Assn.

Rex Capwell and Jerome J. Foley, Racine, Wis., for defendant Reineman Hardware Co., Inc.

Chester J. Niebler and F. H. Prosser, Milwaukee, Wis., for defendants John Brust and Paul Brust, individually and as co-partners doing business as Brust and Brust.

GRUBB, District Judge.

This matter is before the court on three motions—(1) by the defendant, Memorial Hospital Association of Burlington, Wisconsin (hereinafter called "Hospital"), for dismissal of the cross-complaint of the defendant, Reineman Hardware Co., Inc. (hereinafter called "Reineman"), against the Hospital; (2) by the defendants, John Brust and Paul Brust, individually and as co-partners doing business as Brust and Brust (hereinafter called "Architect"), for dismissal of Reineman's cross-complaint against them; and (3) by the plaintiff, American Casualty Company of Reading, Pennsylvania (hereinafter called "Surety"), for dismissal of Reineman's counterclaim against the Surety. Each of said motions is grounded upon the claim that no cause of action has been pleaded against the moving parties.

In the spring of 1956, the Hospital engaged the Architect to remodel its building. One N. A. Thomas Company (hereinafter called "Thomas") was the successful bidder on the plumbing and heating contracts. The Surety wrote performance bonds covering the Thomas contracts. Thomas went bankrupt in September 1959, and its contracts were terminated. The Hospital then entered into a cost-plus contract with Reineman to complete the Thomas contracts. The Architect continued to render services to the Hospital. Reineman completed the work and has been fully paid on the basis of its contract with the Hospital.

Surety now asserts two causes of action and seeks a declaratory judgment on each of the surety contracts made by it with Thomas. Joined as defendants are the Hospital, the Architect, and the successor performing contractor, Reineman. This action is based on alleged negligence and misrepresentations of the Architect and the Hospital. No demand for relief is asserted against Reineman. Reineman was made a party because at the time the action was commenced, it had monies coming and still had not completed its contract.

On June 11, 1963, Reineman was allowed to amend its answer, file cross-complaints against the Hospital and the Architect, and file a counterclaim against the Surety.

### 1. REINEMAN'S CROSS-COMPLAINT AGAINST THE HOSPITAL

The cost-plus contract between Reineman and the Hospital provides a fixed fee of $22,400 above Reineman's cost for materials and labor. Reineman now prays for an additional $22,400 under the theory that the contract was entered into under a mutual mistake as to the amount of work to be completed. The actual work performed is alleged to have been twice that contemplated, and thus Reineman asserts it is entitled to twice the fixed fee. Reineman also prays for an additional $25,500, alleging that it was

unable to bid on or take other work because of the unforeseen additional work required on the Hospital contract.

Reineman claims that it is entitled to recover against the Hospital basically upon an alleged mutual mistake of fact. It asks: (1) Reformation of the contract, (2) recission of the contract, and (3) recovery on a quantum meruit basis.

■■■ Reformation of a contract is an equitable remedy. Equity will not make a new contract for the parties. Schongalla v. Hickey, 149 F.2d 687 (2d Cir. 1945). Reformation presupposes that the instrument does not express the true intent of the parties, and its purpose is to make an erroneous instrument express correctly the intention of, or the real agreement between the parties. It proceeds on the theory that a valid contract was created but due to mistake is wanting in formal expression so as to evince the actual intent of the parties. Harley v. Magnolia Petroleum Co., 378 Ill. 19, 37 N.E.2d 760, 137 A.L.R. 900 (1941). Reineman has failed entirely to allege what the Hospital and it would have agreed to in absence of the alleged mistake of fact. It does not necessarily follow that the fee would have been double because the work was twice that contemplated. It would be inappropriate for this court to "reform" the contract and insert a fee double that agreed upon. To do so would in effect amount to a making of a new contract for the parties.

■■■ Recission of a contract is also an equitable remedy. The allowance of cancellation rests in the sound discretion of the court, to be exercised in the case of executed contracts with great circumspection. Woldenberg v. Riphan, 166 Wis. 433, 166 N.W. 21 (1918); Oliver v. Baldwin, 201 Mich. 336, 167 N.W. 910 (1918). Mutual mistake of fact is a recognized ground for rescinding a contract. But where an alleged mistake of fact is but a contingency, which the parties foresaw was liable to arise from their want of personal knowledge, such contingency forming a basis, in part, of the contract, it is not a ground for recission. Bee v. Chicopee Mfg. Corporation, 94 N.H. 478, 55 A.2d 897 (1947). To the same effect is the Restatement of Contracts, § 502, Comment f (1932). In the present case the written contract provided:

> "* * * and the present, partially completed status of the work * * * is such that it would be very difficult to obtain firm, one sum bids for the completion of either of said contracts; * * *."

Considering the very nature of a cost-plus contract and in light of the express language used in the contract, this court finds that an element of contingency was clearly foreseen by the parties. Based on the facts it has alleged in the cross-complaint, which incorporated the contract itself, Reineman has not stated facts which will allow this court to rescind the contract.

■■■ Quantum meruit recovery is also prayed for. Reineman has in effect also prayed for additional compensation on the theory of unjust enrichment. This amounts to pleading in the alternative, since such a recovery rests on quasi-contract which in turn is limited to situations where there is no contract in fact. Reineman alleges both that there was a contract which should be reformed or rescinded and that it was void due to mutual mistake. Mutual consent is a requisite to the creation of a contract, and if there is a mistake of fact by the parties going to the essence of the contract, no agreement is in fact made. Technically, a void contract is a nullity and there is nothing to rescind. But "If there is apparently a valid contract in writing, but by reason of a mistake of fact * * * equity will give to such party a remedy by cancellation * * *." Steinmeyer v. Schroeppel, 226 Ill. 9, 80 N.E. 564, 565, 10 L.R.A.,N.S., 114 (1907). As previously pointed out, the parties to the contract clearly foresaw the contingency relating to the scope, quantity, and cost of the work. This court is of the opinion and finds that the parties clearly entered an express written cost-plus contract. This contract, by its express lan-

guage, clearly evidences that there could have been no mutual mistake as to the status of the work. Since there is a valid express contract, recovery cannot be had on a theory of implied contract. Roszina v. Nemeth, 251 Wis. 62, 27 N.W. 2d 886, 28 N.W.2d 885 (1947); E. H. Marhoefer Jr., Co. v. Mount Sinai, Inc., 190 F.Supp. 355, 360 (E.D.Wis.1961). The absence of mutual mistake of fact also prevents recission on such basis.

The defense of laches is raised in the Surety's brief. There it is pointed out that Reineman failed to act promptly upon discovery of the "facts" which it now claims entitles it to recission or reformation. Such a defense would also have application as against the Hospital. Although the Hospital would need to allege such a defense in its pleadings, if this were properly before the court, this would be another ground for dismissing Reineman's cross-complaint against the Hospital.

The Hospital's motion to dismiss the cross-complaint of Reineman is granted for the above-cited reasons.

## 2. REINEMAN'S CROSS-COMPLAINT AGAINST THE ARCHITECT

The issue here is whether Reineman, which contracted directly with the Hospital, has a cause of action against the Architect which had previously contracted with the Hospital for professional services. The crux of Reineman's complaint is that the Architect represented to the Hospital that the work was 83 per cent completed when in fact it was only about 66 per cent completed. It is alleged that the Hospital and Reineman relied on this representation when they contracted. Reineman rests its claim in tort. The issue is whether the Architect can be liable to a third party where the Architect negligently certified work to the owner under a contract and the third party relied upon such certification.

It is the general rule that no tort action can arise from a breach of a duty existing by virtue of a contract unless privity of contract exists between the parties. Basically, Reineman sup-

ports its action against the Architect on the landmark case of Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275, 23 A.L.R. 1425 (1922). In that case A sold 900 bags of beans to B on a poundage basis. A requested C in writing to render its weighing services and issue a certificate of weight. C was to send the original certificate to A and a copy to B. C erred in the weighing, and B sued C alleging negligence. B was allowed to recover. Justice Cardozo made the following points in the decision:

1. Plaintiffs' use of the certificates was not an indirect or collateral consequence but one which, to the weighers' knowledge, was the end and aim of the transaction.

2. One who follows a common calling may come under a duty to another whom he serves, though a third person may give the order or make the payment.

3. Defendants did not merely use careless words but carelessly performed a service—the act of weighing—and then certified it in writing.

The court concluded by saying at page 277 of 135 N.E.:

"\* \* \* The defendants, acting, not casually nor as mere servants, but in the pursuit of an independent calling weighed and certified at the order of one with the very end and aim of shaping the conduct of another. Diligence was owing, not only to him who ordered, but to him also who relied."

The cases which have followed Glanzer have not extended the rule contained therein. Rather, the majority of cases support the holding that there is no liability for negligent misrepresentation to a person not specifically *known* and *identified* as one to whom the representation will be communicated for the purpose of inducing him to act on it. Mere reasonable anticipation that the representations will be passed on to unidentified third persons for the purpose of inducing them to enter into commercial dealing is not enough to impose a duty to such persons to exercise care. Ultra-

544

mares Corporation v. Touche, 255 N.Y. 170, 174 N.E. 441, 74 A.L.R. 1139 (1931); Peterson v. Gales, 191 Wis. 137, 210 N.W. 407, 47 A.L.R. 956 (1926); National Iron & Steel Co. v. Hunt, 312 Ill. 245, 143 N.E. 833, 34 A.L.R. 63 (1924). There is a line of cases which extends liability where the representation is embodied in a tangible object which may be expected to pass into the hands of third persons under the theory of foreseeability that a certain class of persons will rely on the information. National Shawmut Bank of Boston v. Johnson, 317 Mass. 485, 58 N.E. 2d 849 (1945); Graham v. John R. Watts & Son, 238 Ky. 96, 36 S.W.2d 859 (1931); also see Restatement of Torts, § 552 (1938).

■ Reineman does not allege that the Architect's estimates were made in writing or on a certified document for the use or expected use of a class of persons of which it was a member. Reineman's allegation reads: "That this figure was supplied to Reineman and the hospital by the architects, * * *." If in fact the only completion estimates were made to the Hospital, pursuant to the terms of the contract between the Architect and the Hospital, Reineman has failed to state a claim. However, Reineman has broadly alleged that the Architect made such estimates to it and the Hospital. If Reineman can sustain such allegation, it may have a remedy against the Architect, since the Architect would then have clearly foreseen Reineman's reliance on the information. Reineman should have an opportunity to substantiate its broad allegation against the Architect. The motion of the Architect to dismiss the cross-complaint of Reineman is therefore denied.

## 3. REINEMAN'S COUNTERCLAIM AGAINST THE SURETY

■ Reineman alleges that the Surety is liable to it for additional fees because it repeatedly assured Reineman that it would pay Reineman for all the additional work. In asserting a claim against the Surety, Reineman asserts that it is depending on the same remedy it asserts against the Hospital; namely, reformation of the contract. This is illustrated by the following passage from Reineman's reply brief: "Actually, Reineman seeks reformation of the contract to include the additional fees due to it." If the contract is reformed, Reineman believes it would be awarded additional fees. Reineman seeks to hold the Surety and the Hospital liable for any such fees. The court has previously ruled that Reineman has failed to show that it is entitled to a reformation of the contract. However, the allegation of a promise to pay could raise a factual issue. Surety's motion to dismiss Reineman's counterclaim is not well taken and is therefore denied.