Hillsborough
No. 7761

ALFRED H. RANGER

v.

NEW HAMPSHIRE YOUTH DEVELOPMENT CENTER
ROBERT M. DUVALL, LABOR COMMISSIONER

August 1, 1977

*Cleveland, Waters & Bass* and *Robert T. Clark* (*Mr. Clark* orally), for the plaintiff.

*David H. Souter*, attorney general, and *Anne E. Cagwin*, attorney (*Ms. Cagwin* orally), for the defendants.

KENISON, C.J.   On December 1, 1966, the plaintiff, in the course of his employment at the New Hampshire Youth Development Center, suffered a severe alkali burn in his right eye. He promptly notified his employer and subsequently received workmen's compensation benefits consisting of payments for medical expenses and for lost wages. A gradual deterioration of vision followed until November 4, 1975, when a doctor concluded that the plaintiff had suffered a total and permanent loss of sight in his right eye. On April 1, 1976, the workmen's compensation review commission held that the plaintiff was entitled to a scheduled permanent impairment award for total loss of vision of one eye. RSA 281:26 (Supp. 1975). Such award was computed using the plaintiff's average weekly wage of December 1, 1966—the date of the injury. Believing that the review commission should have used his average weekly wage as of November 4, 1975—the date upon which it was established that he had lost the vision in his eye—the plaintiff petitioned the labor commissioner. The commissioner, however, sustained the decision of the review commission. The plaintiff's appeal to the superior court was reserved and transferred to this court by *Flynn*, J. RSA 491:17.

The sole issue is whether, in a case in which injury and loss occur years apart, the scheduled permanent impairment award should be based upon the average weekly wage as of the date of the injury or the date of prompt medical disclosure of the loss.

The statute does not explicitly answer the question. The scheduled permanent impairment award provision, RSA 281:26 (Supp. 1975), states that the award shall be paid to employees in amounts provided by RSA 281:23. That section sets forth a compensation schedule based upon a percentage of the employee's average weekly wage. RSA 281:2 VII (Supp. 1975) defines average weekly wages as "the gross earnings of the injured employee in the service of the same employer *during the preceding twelve weeks,* or a longer period, not to exceed one year, if more favorable to the injured, divided by the number of weeks." RSA 281:2 VII (Supp. 1975) (emphasis added). The statute, however, does not state *what* event the twelve weeks precede.

The defendants urge us to apply the reasoning in *Davis v. Manchester,* 100 N.H. 335, 126 A.2d 254 (1956) and *Bee v. Chicopee Mfg. Corp.,* 94 N.H. 478, 55 A.2d 897 (1947), both of which held that, for the purposes of determining disability benefits under RSA 281:24 (1955) (Laws 1947, 266:1, para. 22) (*Davis*) and R.L. 216:20 I, 22 (1942) (*Bee*), the average weekly wage is computed as of the date of the injury, not the date upon which the disability manifests itself. We will assume, for the purposes of this case, that *Davis* and *Bee* were correctly decided under the statutes as they existed then. However, it does not necessarily follow that *Davis* and *Bee* control this case or are even authoritative in the present context. First, they involved the computation of *disability* benefits under RSA 281:24 (1955) (Laws 1947, 266:1, para. 22) (*Davis*) and R.L. 216: 20 I, 22 (1942) (*Bee*) as opposed to *scheduled* benefits under RSA 281:26 (1955) (Laws 1947, 266:1, para. 24) and R.L. 216:23 (1942)—which were the predecessors of the present scheduled permanent impairment award provision involved in this case, RSA 281:26 (Supp. 1975). Second, even if the reasoning of *Davis* and *Bee* would have been applicable to scheduled awards as well as disability benefits when those cases were decided, the relationship between the two kinds of compensation has changed so dramatically in recent years that we must undertake a fresh analysis of the statutory scheme to decide this case.

■ Prior to 1973, scheduled benefits under section 26 were "in lieu of any and all compensation under any other provision of this chapter." RSA 281:27 (1966). The employee could elect to forego the section 26 award if the total benefits to which he would otherwise be entitled under other provisions exceeded the section 26 award, but he could not receive compensation under both section

26 and some other section or sections. *Id.* This election provision was repealed in 1973. Laws 1973, 481:12. The scheduled award is now "[i]n addition to other benefits payable under this chapter." RSA 281:26 (Supp. 1975). Thus, the scheduled award is no longer an alternative formula under which one recovers for a work-related injury. It is now an additional award which compensates for injury regardless of whether there is an actual wage loss. 2 A. Larson, The Law of Workmen's Compensation § 58.11 (1976). To this extent it is unrelated to the other benefits available under the statute.

Recent language changes in section 26 also evidence a legislative intent to distinguish between scheduled awards and other benefits. The statute states: "The scheduled awards under this section accrue to the injured employee simply by virtue of the loss or loss of the use of a member of the body, there being conferred upon the employee a right which is *separate and independent* of the rights provided by [the disability provisions of the statute]." RSA 281:26 II (Supp. 1975) (added by Laws 1973, 481:10) (emphasis added). The section also provides that "[p]ayment of the scheduled award becomes due upon prompt medical disclosure regarding the loss or loss of use of the member of the body. . . ." RSA 281:26 III (Supp. 1975) (added by Laws 1973, 481:10).

Given that the scheduled award is in addition to and wholly independent of other benefits, that it is the loss itself which triggers accrual of the award, and that the payment becomes due upon prompt medical disclosure of the loss, it is reasonable to assume that the legislature intended the amount of the award to be controlled by the date of the loss. Nothing in the language or legislative history of the statute supports a contrary result. Common sense also requires that we read the statute as making date of loss relevant. Because the purpose of section 26 is to compensate an employee for the loss of the use of a member of his body, it makes little sense to base the award upon what the employee earned several years before the loss even occurred. This is especially true in cases, such as the instant one, in which the employee's wages when he was injured were far less than his earnings when he experienced the loss. *See* Annot., 86 A.L.R. 524 (1933). We hold that, in determining the scheduled award, the average weekly wage shall be based upon the employee's wages as of the date of prompt medical disclosure regarding the loss.

This result is consistent with holdings in analogous cases in other jurisdictions. In *Sherry v. Crescent Company*, 101 R.I. 703, 226 A.2d 819 (1967), the plaintiff suffered a loss of vision as a result of an accident which occurred three years earlier. The issue presented was whether the statutes in effect at the time of the accident or those in effect at the time of the loss governed the amount of compensation receivable. The Supreme Court of Rhode Island held that compensation must be paid at the rates provided by statutes in effect at the time of the loss of vision. The court reasoned that rights to specific loss benefits accrue independently of disability benefits and that a cause of action for specific compensation accrues only when the condition provided for in the statute occurs. *Id.* at 706, 226 A.2d at 821; *accord, LeBrun v. Woonsocket Spinning Co.*, 106 R.I. 253, 258 A.2d 562 (1969). Similarly, in a case nearly identical to the present one, the Michigan Supreme Court held that specific loss benefits for a latent loss of vision must be computed as of the date of the loss, not the date of the injury. *Allen v. Kalamazoo Paraffine Co.*, 312 Mich. 575, 20 N.W.2d 731 (1945).

Important policy considerations also support our conclusion. The remedial nature of workmen's compensation laws dictates that they be liberally construed and that all reasonable doubts be resolved in favor of the injured employee. 12 W. Schneider, Workmen's Compensation § 2552 (3d ed. 1959); *see Hartford Acc. & Indem. Co. v. Duvall*, 113 N.H. 28, 300 A.2d 732 (1973); *Prassas v. Company*, 100 N.H. 209, 211, 123 A.2d 157, 158 (1956); *Mulhall v. Company*, 80 N.H. 194, 199, 115 A. 449, 453 (1921). Under the defendants' proposed reading of the statute, two employees who sustain injuries years apart but who go blind on the same day could receive vastly different scheduled awards even though at the time they lose their vision their wages are equal. Such an inequitable result does not comport with the beneficent purposes of the workmen's compensation laws. *Dodier v. State Dept. of Labor*, 117 N.H. 315, 373 A.2d 341 (1977). Burton, *Permanent Partial Disabilities and Workers' Compensation*, 53 J. Urb. L. 853, 863–66 (1976).

*Plaintiff's appeal sustained.*

All concurred.