613 F.2d 1235
 103 L.R.R.M. (BNA) 2412, 87 Lab.Cas. P 11,811
 H. PRANG TRUCKING CO., INC., Appellant,
v.
LOCAL UNION NO. 469, Affiliated with the International
Brotherhood of Teamsters, Chauffeurs, Warehousemen and
Helpers of America, and Charles Levitan, George L. Claflen,
Anthony J. Kosak, William H. Johnson, Walter Emerson and
Robert Rossi, Trustees of Teamsters Local 469 Welfare and
Pension Fund, Appellees.
 No. 78-2057.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 13, 1979.
Decided Jan. 16, 1980.
 
 1
 Thomas F. X. Foley, Colts Neck, N. J., Arthur Liberstein (argued), New York City, for appellant.
 
 
 2
 Timothy R. Hott (argued), Friedland & Friedland, Jersey City, N. J., for appellees.
 
 
 3
 Before SEITZ, Chief Judge, ALDISERT, Circuit Judge and HUYETT, District Judge.*
 
 OPINION OF THE COURT
 
 4
 HUYETT, District Judge.
 
 
 5
 This is an appeal from an order and judgment denying the motions of H. Prang Trucking Co., Inc. (Prang) for preliminary and permanent injunctions. Prang instituted these proceedings pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1976), to enjoin arbitration between itself and Teamsters Local Union No. 469 (the Union) after the Union submitted a dispute concerning Prang's failure to make contributions to the Welfare and Pension Fund for owner-operators to the New Jersey-New York Joint Area Committee. The district court initially granted a temporary restraining order; however, the order was not extended, and, after hearing, Prang's applications for preliminary and permanent injunctions were denied. The court below found that Prang and the Union were parties to the National Master Freight Agreement (NMF) in effect from April 1, 1976 to March 31, 1979, that the NMF contained a grievance/arbitration provision, and that the current dispute fell within the ambit of that provision. Given its finding of arbitrability, the district court correctly refrained from voicing any opinion on the merits of the underlying dispute between the parties. See United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).
 
 
 6
 On appeal Prang argues (1) that the district court erred in concluding that there was an agreement to arbitrate the issue in dispute, (2) that if there was an agreement to arbitrate, the court erred in failing to find the Union's demand for arbitration barred by the statute of limitations, estoppel, laches, or waiver, and (3) that the court erred in failing to reform the contract to exclude the provisions giving rise to this dispute or, alternatively, in failing to rescind the agreement because of a mutual mistake of fact. Because it is unclear from the record if the district court considered the issues of reformation and rescission that were presented to it, and because the district court failed to make adequate findings to support its decision on those issues if it did consider them, we vacate the judgment and order of the district court and remand for further proceedings. In view of our disposition of this appeal, it is unnecessary for us to address Prang's first two contentions at this time.
 
 I.
 
 7
 The collective bargaining history between Prang and the Union dates from 1956. The district court found that from 1956 to 1960 the parties negotiated "house contracts" independently of any national contracts that may have existed in the industry. Since 1960, however, the district court found that "the agreements between the parties have been incorporated in the National Master Freight Agreement." App. 44a. Testimony presented by Prang at the hearing below revealed that, although Prang does not participate directly or through any trade association in the negotiation of the NMF, App. 59a-60a, the parties adopt the terms of the NMF once it has been promulgated. Prang, of course, contends that the parties have not adopted the NMF in its entirety.
 
 
 8
 Articles 22 and 54 of the NMF for the period April 1, 1976 to March 31, 1979 regulate an employer's utilization of owner-operators. Section 4 of Article 54 provides in part that "(o)wner-drivers shall be covered by all provisions and receive all benefits provided for in this Agreement including, but not limited to, wages, health and welfare, (and) pension . . . ." Article 46 delineates a detailed grievance/arbitration procedure and states that "(t)he Union and the Employer agree that there shall be no strike, lockout, tie-up, work stoppage, or legal proceedings without first using all possible means of a settlement, as provided for in this Agreement, of any controversy which might arise." NMF, Article 46, § 1. Furthermore, the Agreement specifies that "(q)uestions or disputes concerning the interpretation (,) application (,) or enforcement of the grievance procedures provided in this Agreement shall themselves be deemed arbitrable . . . ." Id. § 2.
 
 
 9
 Despite the language of Article 54 and the breadth of the grievance/arbitration clause, Prang contends that the current dispute is not arbitrable because of an agreement between the parties to exclude the owner-operators from the pertinent sections of their Agreement. The district court found that prior to September 1, 1964, Prang and the Union had executed supplemental agreements deleting from their Agreement the article requiring payments to the pension fund on behalf of owner-operators. The district court further found that no such supplemental agreement has been signed by the Union since September 1, 1964, App. 44a, although Prang apparently submitted similar supplemental agreements which it had executed with at least some of the subsequent Agreements. Prang now contends that the laymen who conducted the negotiations for the parties at all times assumed that the disputed NMF provisions were not part of their Agreement, that the parties at all times acted in accordance with this understanding of the Agreement between them, and that Prang would not have entered into an Agreement binding it to make the disputed contributions on behalf of the owner-operators.
 
 
 10
 At the conclusion of the testimony before the district court, Prang requested the court "to either reform or rescind the agreement on the basis of mutual mistake of fact and/or law." App. 262a. Treating Prang's request as a motion to amend the pleadings, the district court granted the motion to amend but declined to state whether it would consider Prang's new theory of relief.[1]
 
 
 11
 In its findings of fact and conclusions of law, the district court did not directly address the issues of reformation or rescission. The court did state, however, that "(Prang's) argument that there was an 'understanding' to continue the contract on the basis of an expired Article deleting the payment of owner-operators' pension and welfare benefits, is without merit." App. 45a. To the extent that this conclusion addresses Prang's most recent theory of relief, there are no findings of fact in the record to provide a basis for review.
 
 II.
 
 12
 Federal Rule of Civil Procedure 52(a) requires that
 
 
 13
 In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its actions.
 
 
 14
 The requirement that the trial court make its findings in the cases enumerated in Rule 52 is mandatory. 9 Wright & Miller, Federal Practice & Procedure § 2574, at 690 (1971). In reviewing the judgment of a trial court, an appellate court "may vacate the judgment and remand the case for findings if the trial court has failed to make findings when they are required or if the findings it has made are not sufficient for a clear understanding of the basis of the decision." Id. § 2577, at 697 (footnotes omitted). In O'Neill v. United States, 411 F.2d 139 (3d Cir. 1969), we noted that the requirement of Rule 52(a) is not satisfied "by the statement of the ultimate fact without the subordinate factual foundations for it which also must be the subject of specific findings." Id. at 146. Subordinate findings, we continued,
 
 
 15
 may not be left unarticulated. If they actually were reached in the process of arriving at the ultimate factual conclusion, they must be stated. If they did not enter into the process by which the ultimate factual finding was made, then it was without any supporting foundation. In either case, therefore, it is necessary that the trial court specify these subordinate facts upon which the ultimate factual conclusion must rest.
 
 
 16
 Id. See generally R. Aldisert, The Judicial Process 693-94 (1976).
 
 
 17
 It is unclear if the district court considered Prang's contention that the Agreement at issue should be reformed or rescinded. See note 1 Supra. To the extent that the court's findings of fact and conclusions of law do constitute an adjudication of those issues, however, the findings are inadequate to explain the basis for that ruling or to permit meaningful review. We shall therefore remand this action to the district court for further findings.[2]
 
 III.
 
 18
 Both reformation and rescission are equitable remedies that are sparingly granted. Reformation presupposes that a valid contract between the parties was created but, for some reason, was not properly reflected in the instrument that memorializes the agreement. American Casualty Co. v. Memorial Hosp. Ass'n, 223 F.Supp. 539 (E.D.Wis.1963). Rescission, on the other hand, may be an appropriate remedy where the contracting parties made a mutual mistake of fact. Beecher v. Able, 441 F.Supp. 426 (S.D.N.Y.1977), Aff'd, 575 F.2d 1010 (2d Cir. 1978). Although both concepts arise more frequently in the area of traditional contract law, their applicability is not unknown in the field of labor contracts. See, e. g., Food Handlers Local 425 v. Valmac Industries, Inc., 528 F.2d 217 (8th Cir. 1975); West Coast Telephone Co. v. Local Union No. 77, IBEW, 431 F.2d 1219 (9th Cir. 1970). A determination of their applicability or inapplicability in a particular case, however, turns on the precise facts surrounding the transaction in question. See Calhoun v. Bernard, 333 F.2d 739 (9th Cir. 1964). In this case adequate findings to support a determination of the doctrines' applicability or inapplicability were not made.
 
 
 19
 In addition to factual findings, a determination of whether reformation or rescission may be appropriate in this case involves complex legal questions. Specifically, the effect, if any, of the arbitration clause introduces an element of uncertainty not present in many contract cases. See, e. g., West Coast Telephone Co. v. Local Union No. 77, IBEW, supra (reformation issue not arbitrable under terms of arbitration clause); Cf. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (claim of fraud in inducement of entire contract in an action under Arbitration Act of 1925, 9 U.S.C. §§ 1-14, is for arbitrator). These issues have not been briefed on appeal, and it does not appear from the record that the parties thoroughly developed these topics below. We believe that the trial court should have an opportunity to pass on these important questions in the first instance.
 
 IV.
 
 20
 The federal policy in favor of the resolution of disputes by arbitration is by now well established. See Teamsters Local Union No. 30 v. Helms Express Inc., 591 F.2d 211 (3d Cir.), Cert. denied, --- U.S. ----, 100 S.Ct. 74, 62 L.Ed.2d 48 (1979). Our decision today should not be viewed as a retrenchment from that position. We hold only that when a party in an action to enjoin arbitration properly raises issues the determination of which may preclude arbitration of the underlying dispute, the trial court must consider those issues, rule upon them, and support its conclusions with adequate findings of fact. Therefore, the judgment and order of the district court shall be vacated, and the action shall be remanded for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Daniel H. Huyett, 3rd, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The Court stated: "I'll grant your motion to amend the pleadings. Whether or not I am going to consider it, I'm not going to say at this moment. I will let you amend the pleadings to incorporate that fact." App. 263a
 Following its order of April 24, 1978 denying the motions for preliminary and permanent injunctions, the court entertained reargument on June 8, 1978. The issues of reformation and rescission were raised in the arguments; no additional testimony was taken. On June 22, 1978, the court issued an order denying Prang's motion for reconsideration. The order, however, was not accompanied by a memorandum discussing reformation or rescission, nor were any additional findings made based upon the testimony of the earlier hearing.
 
 
 [2]
 On remand the district court may make additional findings based upon the testimony presented, or, if it deems it appropriate, it may hear additional testimony