Original
No. 84-245

PETITION OF DIANA LAPINSKI
(New Hampshire Department of Labor)

July 24, 1985

*Kahn & Brown*, of Nashua (*Kenneth M. Brown* on the brief and orally), for Diana Lapinski.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Ronald J. Lajoie* on the brief, and *Theodore Wadleigh* orally), for Liberty Mutual Insurance Company.

*Stephen E. Merrill*, attorney general (*James A. Sweeney*, attorney, on the brief), by brief on behalf of the Department of Labor, as amicus curiae.

PER CURIAM. In this petition for certiorari, we are asked to determine the basis on which a scheduled permanent impairment award under RSA 281:26 (1977 & Supp. 1983) is to be calculated where the injury and the permanent impairment occurred years apart and where the degree of permanent impairment itself was in dispute.

The petitioner, Diana Lapinski, now thirty-eight years of age, suffered a work-related back injury on September 11, 1975, while

working as an administrative secretary for Sanders Associates, Inc. She was immediately eligible to collect workers' compensation benefits and received a weekly benefit of $131.06. Thereafter, Ms. Lapinski underwent a series of medical treatments, including two major back operations in 1977, a number of myelograms and injections of cortisone into her spine. In 1982, Ms. Lapinski's physician, Garrett G. Gillespie, M.D., determined that she had reached an end result and that further medical treatment would be of no avail, and, on March 17, 1982, advised her counsel that Ms. Lapinski had, after treatment and healing, a 50 percent permanent impairment of each leg.

Liberty Mutual Insurance Company, the workers' compensation insurance carrier for Sanders Associates, Inc., then scheduled an independent examination for a second opinion regarding the permanent impairment. On April 28, 1982, William J. Kilgus, M.D., examined Ms. Lapinski, and he determined that she had a 5 percent permanent partial disability to the left lower extremity.

In December 1982, after the parties had failed to reach an agreement on a permanent impairment award, the petitioner requested a hearing before the New Hampshire Department of Labor, pursuant to RSA 281:37, for the purpose of determining the permanent impairment award. On March 15, 1983, a hearing was held, at which time the department of labor, citing the discrepancy between the two doctors' opinions as to the extent of permanent impairment, decided to schedule an independent examination with Bruce D. Abrams, M.D., for the purpose of obtaining an objective appraisal of Ms. Lapinski's condition.

On June 29, 1983, Dr. Abrams reported that, in his opinion, Ms. Lapinski was permanently disabled, and he determined that she had a 20 to 25 percent permanent impairment to her whole body. For several months, the department of labor, through written correspondence, tried to elicit Dr. Abrams' opinion of permanent impairment with respect to the left lower extremity. In a letter received by the department sometime in October 1983, Dr. Abrams reiterated that the permanent impairment was 25 percent.

The department of labor, on November 7, 1983, advised petitioner's counsel that it was at a loss concerning how to determine just what percentage of impairment to assign to the claimant and suggested that the parties attempt to reach a compromise figure. On November 23, 1983, Deputy Labor Commissioner Peter Collins determined that the claimant had a 62 percent permanent partial disability to the left lower extremity.

On February 28, 1984, the department of labor issued a Memo of Permanent Partial Disability Award using the petitioner's adjusted

weekly benefit level of $186.00—the benefit level she was receiving at that time. On April 20, 1984, the department issued a revised Memo of Permanent Partial Disability Award, computing petitioner's award on the basis of her original weekly benefit rate of $131.06. In a letter dated May 4, 1984, the department explained: "Please be advised that Deputy Commissioner Collin's [sic] has [decided] . . . that the permanency award is based upon the original compensation rate of $131.06, not $186.00."

The petitioner challenges the department's computation of her award on the basis of the weekly benefits she received at the time of her injury. Because there is no statutory mechanism by which she can appeal the decision of the department of labor, she seeks relief by petition for certiorari. *See Cooper v. Roy M. Wright, Inc.*, 121 N.H. 181, 183, 427 A.2d 51, 52 (1981).

The central issue raised in this case was this: when a work-related injury and a resulting permanent loss occur years apart, should a permanent impairment award under RSA 281:26 (1977 & Supp. 1983) be computed using the average weekly earnings as of the date of the original injury or those as of the date of prompt medical disclosure of permanent loss? That issue was resolved by this court in *Ranger v. New Hampshire Youth Development Center*, 117 N.H. 648, 377 A.2d 132 (1977). In *Ranger*, we reviewed the provisions of the workers' compensation law and determined that a permanent impairment award under RSA 281:26 (1977 & Supp. 1983) is separate and distinct from any other benefits available under the workers' compensation statute. *Id.* at 651, 377 A.2d at 134; *see* RSA 281:26, I and II (Supp. 1983). We opined:

> "Given that the scheduled award is in addition to and wholly independent of other benefits, that it is the loss itself which triggers accrual of the award, and that the payment becomes due upon prompt medical disclosure of the loss, it is reasonable to assume that the legislature intended the amount of the award to be controlled by the date of the loss. Nothing in the language or legislative history of the statute supports a contrary result. Common sense also requires that we read the statute as making date of loss relevant. Because the purpose of section 26 is to compensate an employee for the loss of the use of a member of his body, it makes little sense to base the award upon what the employee earned several years before the loss even occurred. This is especially true in cases, such as the instant one, in which the employee's wages when he was injured were far less than his earn-

ings when he experienced the loss. . . . We hold that, in determining the scheduled award, the average weekly wage shall be based upon the employee's wages as of the date of prompt medical disclosure regarding the loss."

*Id.* (citation omitted).

█ Thus, where injury and loss occur years apart, it is clear that, under the law of this jurisdiction, a permanent impairment award should be based upon an employee's earnings at the time of the disclosure of the permanent loss. Liberty Mutual Insurance Company does not dispute that this is the law of the State, and we see no persuasive reason to depart from this rule in the case at bar.

The department of labor, however, argues that *Ranger* is inapposite to the case at bar. The department takes the position that in the instant case, unlike *Ranger*, the injury and the loss occurred at the same time. Thus, the department argues, the petitioner's award was properly computed on the basis of weekly benefits received at the time of the injury. Although we agree that there are cases in which an injury and a permanent loss occur simultaneously, *see Petition of Dependents of Doran*, 123 N.H. 429, 433, 462 A.2d 114, 116 (1983), such a case is not presently before us.

█ In the instant case, we are dealing with compensation for permanent loss of use. In such a case "[i]t is permanency which is essential because it is only for a *permanent* loss, not for any loss, that the statute provides benefits." *Fogarty v. State of R.I.*, 103 R.I. 228, 230–31, 236 A.2d 247, 248 (1967) (emphasis in original).

> "[W]here, after sustaining an injury involving the loss of use, the employee submits to medical or surgical intervention in an effort to restore use to the bodily member or to ameliorate the injury, the time at which a determination of the permanence of the loss of use is to be made is when medical science has concluded that further such intervention would be of no avail. . . . [W]hatever the proportion of the loss of use may be, it becomes permanent in these situations when sound medical opinion takes the position that science can do no more."

*LeBrun v. Woonsocket Spinning Co.*, 106 R.I. 253, 257, 258 A.2d 562, 564–65 (1969), *cited in Ranger*, 117 N.H. at 652, 377 A.2d at 134. Hence, the critical period of time for the purpose of determining when a loss occurs is the time at which the permanency of the loss becomes evident. In the instant case, the permanent loss occurred at the time at which it was determined that further medical treatment to the back would be of no avail and, thus, that the impairment was

permanent. It is clear that such a determination was made years after the injury and, thus, the rule in *Ranger* is applicable to the case before us.

Our inquiry does not end here, however, for two additional issues have been raised with respect to the application of the *Ranger* holding under the circumstances of the instant case. First, we must determine what date is to be used in calculating a permanent impairment award under RSA 281:26 (1977 & Supp. 1983), where the degree of permanent impairment is in dispute. Second, we are asked to decide whether a statutory increase in weekly benefits under RSA 281:23-a subsequent to the injury is to be considered in computing a permanent impairment award.

Turning to the first argument, we note that RSA 281:26, III (Supp. 1983) directs that "[p]ayment of the scheduled award becomes due upon prompt medical disclosure, after maximum medical improvement has been achieved, regarding the loss . . . and shall begin . . . as soon as possible, but no later than 14 days after the end of the healing period. . . ." The petitioner argues that by including RSA 281:26, IV, which provides, in part, that "[i]n event of dispute as to . . . [the] percentage of permanent partial loss . . . the same shall be determined by the labor commissioner . . . ," the legislature recognized that there are cases in which there may be disagreement as to whether and to what extent there is permanent impairment, and that because in such cases payment cannot be made within the statutorily imposed period, the legislature must have intended that compensation in a disputed case be handled differently. The petitioner suggests that, in such cases, the date of the department's decision triggers compensation and the award must be based upon the amount of weekly benefits received as of that date.

It is obvious that payment of a permanent impairment award, in a disputed case, may not begin within the time period specified in RSA 281:26, III (Supp. 1983), and we agree with the petitioner that in such a case the labor commissioner's decision will trigger *payment* of the award under that section. It does not necessarily follow, however, that the award should be based upon the injured worker's weekly benefits at the time of the decision. Rather, the award should be computed using the benefit amount received at the time the worker's right to compensation for the permanent loss accrued.

We previously have held that "RSA 281:26, III . . . determines only when *payment* becomes due, not when a worker's *rights* accrue." *Petition of Dependents of Doran*, 123 N.H. at 432, 462 A.2d at 116 (emphasis in original). The *right* to compensation for perma-

nent loss accrues at the time the loss occurs, not at the time of the final medical determination of the full extent of the loss. *See id.* at 433, 462 A.2d at 116 (right to award accrued at time worker was injured, as this is when the loss occurred). As our foregoing analysis makes clear, a permanent loss may occur either at the time of the injury or when sound medical opinion takes the position that further medical treatment will be of no avail and that the loss is permanent.

In the case before us, it is clear that the loss occurred in March 1982, when Ms. Lapinski's physician, Dr. Gillespie, reported that she had reached an end result in her treatments and that she had a 50 percent permanent impairment of each leg. Although the final determination as to the extent of the impairment was not made until November 1983, the permanent loss was disclosed in March 1982; accordingly, that is when the petitioner's right to compensation for her permanent impairment accrued.

In March 1982, the petitioner was receiving $131.06 in weekly benefits. Because the weekly benefits at the time the permanent loss accrued were equal to the weekly benefits received at the date of the injury (the basis for the department's award), we need not address petitioner's final argument concerning the effect of later benefit increases under RSA 281:23-a.

▮  Accordingly, we conclude that the labor commissioner did not err in computing the petitioner's permanent impairment award using the weekly benefit level of $131.06.

*Affirmed.*