Original
No. 85-484

### PETITION OF ROBERT CORREIA
### (New Hampshire Department of Labor)

November 7, 1986

*Shaheen, Cappiello, Stein & Gordon,* of Concord (*Gregory Martin* on the brief and orally), for the petitioner.

*Wadleigh, Starr, Peters, Dunn & Chiesa,* of Manchester (*Theodore Wadleigh* on the brief and orally), for the respondents, Riverslea Farms and Insurance Company of North America.

SOUTER, J.   On review under writ of certiorari to the department of labor, the petitioning claimant for workers' compensation benefits argues that the date of disability should govern the calculation of a weekly temporary partial disability award under RSA 281:25 and a scheduled permanent impairment award under RSA 281:26 (Supp. 1985). We disagree and affirm the decision below.

On October 18, 1983, in the course of the petitioner's employment at Riverslea Farms in Epping, a horse kicked him in the back. The petitioner continued to work at the time, and x-rays taken the next day revealed no damage. Over the course of the next three months, however, pain developed in his back, left shoulder and left arm, and he experienced numbness in some of his left fingers. On January 20, 1984, he stopped working because of the pain, and in February he underwent surgery to alleviate it. Despite the operation and therapy thereafter, his symptoms persisted, although he was well enough to take a less physically-demanding job in July, 1984. A specialist examined him and reported on his condition in November, 1984, and after a further examination, the same specialist reported in February, 1985, that the symptoms were unchanged and the left arm was permanently disabled by 30%.

At appropriate times, the petitioner sought workers' compensation benefits under RSA 281:25 for temporary partial disability, and under RSA 281:26 (Supp. 1985) for permanent impairment to his left arm. Weekly benefits under the former section, and specific scheduled awards under the latter, are calculated by reference to a claimant's average weekly wage over a twelve-week, or longer, period. *See* RSA 281:2, VII(1). In calculating the weekly partial disability payments, the labor department determined the average

wage by reference to the period preceding the kicking incident in October, 1983. In calculating the award for permanent impairment of the arm, the department first looked to the average wage for the period preceding the specialist's assessment of permanent partial impairment in February, 1985. But because the defendant's average wage at his new job was then less than the average wage at the time he was kicked, the labor department used the earlier figure in calculating the impairment award.

The petitioner claimed that the department should have based each set of benefits on an average wage determined by reference to a third date, in January, 1985, when his disability led him to leave his job at Riverslea. His average wage then was higher than on the date of the kick or on the date that the specialist assessed the permanent partial disability of the arm. He accordingly brought this petition for certiorari to review the labor department's awards. *See Cooper v. Roy M. Wright, Inc.*, 121 N.H. 181, 183, 427 A.2d 51, 52 (1981).

The petitioner's position is best approached through an examination of the statutory provisions in question and our prior cases that bear on their meaning. So far as it is relevant here, RSA 281:25 authorizes weekly compensation for partial disability by providing that

> "Where the disability for work resulting from an injury is partial, the employer, or his insurance carrier, . . . shall pay to the injured employee a weekly compensation equal to 66–2/3 percent of the difference between his average weekly wage before the injury and the average weekly wage which he is able to earn thereafter. . . ."

By distinguishing between "injury" and "disability," the terms of this provision imply that when injury and disability are not simultaneous, the date of the injury must be taken as the point from which to calculate the average weekly wage as a basis for awarding benefits. This reading is consistent with the accepted meaning of the companion provision for weekly benefits for permanent disability, RSA 281:23, which is subject to a longstanding construction that began with *Bee v. Chicopee Mfg. Corp.*, 94 N.H. 478, 481–82, 55 A.2d 897–900 (1947). There we reasoned that the date of an "accident" as used in R.L. 216:22, the predecessor of the present RSA 281:23, was the date of what earlier law had spoken of as the "injury," each of which was distinguishable from the date on which actual disability might follow. *Bee, supra* at 482, 55 A.2d at 900. We held that the average weekly wage was to be determined by reference to the date of the accident producing the disability, as distinguished from the

onset of the disability produced. This result was affirmed in *Davis v. Manchester*, 100 N.H. 335, 341, 126 A.2d 254, 258 (1956) (construing former RSA 281:24 (repealed 1963; now covered by RSA 281:23; *see* note at RSA 281:24)). We held that injury is understood to occur at the time of accident, which is the point at which to establish the average weekly wage when calculating weekly benefits for a later incapacity resulting from the accident and injury. *Id.* at 339, 126 A.2d at 257.

▪ Although the legislature has recodified the statute since *Bee*, and has amended it since *Davis*, the legislative modifications do not indicate any intent to disturb the earlier statutory interpretations, which are understood to have been adopted. *See Krewski v. Hooksett*, 98 N.H. 175, 176, 96 A.2d 738, 739 (1953); *Bolduc v. Company*, 96 N.H. 235, 238, 73 A. 2d 115, 118 (1950). It is consequently apparent that the department of labor followed established statutory construction in looking to the average weekly wage preceding the kick in 1983, when it calculated weekly benefits for a period after the onset of disability in 1984.

▪ Turning to the provision for permanent impairment, RSA 281:26 (Supp. 1985) authorizes compensation for the loss of various sensory and motor capacities in stated multiples of the weekly "amounts provided by RSA 281:23." Despite that clear language, prior decisions of this court held beyond any question that the average weekly wage forming the basis to calculate benefits for such permanent impairment must be determined with reference to the date of the loss of capacity. *Ranger v. N.H. Youth Dev. Center*, 117 N.H. 648, 651, 377 A.2d 132, 134 (1977). Although the date of the loss may coincide with the date of the injury, *see Petition of Dependents of Doran*, 123 N.H. 429, 433, 462 A.2d 114, 116 (1983), the loss will more commonly occur later. In such a case, the basis for the benefit calculation is the average wage at "the time at which the permanency of the loss becomes evident," *Petition of Lapinski*, 126 N.H. 772, 776, 497 A.2d 841, 844 (1984), which will normally be the "date of prompt medical disclosure regarding the [final extent of the] loss." *Ranger v. N.H. Youth Dev. Center supra.*

In the case before us the loss obviously did not occur at the date of injury, for the claimant worked for several months thereafter. There was no medical disclosure of the degree of impairment until the specialist's report of February, 1985, which the department of labor took to be the date of the loss. (Arguably the date of loss should be set at the date of the specialist's earlier report of November, 1984, since symptoms were unchanged thereafter, but the claimant makes no such argument.)

The department of labor did not, however, calculate benefits by reference to the average wage in February, 1985. Because the average wage was higher on the date of injury, the department took that as the basis for its benefit calculation. Although the department's action was apparently inconsistent with *Ranger*, the insurance carrier did not challenge it and the petitioner does not challenge it on that ground. Accordingly, we accept this aspect of the department's position as proper for purposes of this case.

Although the department's action thus favored the petitioner, he argues that it did not favor him enough. He submits that the department erred in following the longstanding authority of *Bee* and *Davis*, and in departing no further than it did from *Ranger*. His reasoning in each instance rests on the fact that his average weekly wage was highest on the date of disability, when he left his job in January, 1984. His benefits would therefore have been higher if the department had calculated all of them by reference to the average weekly wage on that date. On his theory, the results in our prior cases are not controlling for the very reason that his benefits would have been higher if *Bee*, *Davis* and *Ranger* had been ignored.

Although the claimant has cited two cases from other jurisdictions that would support his position, the primary authority that he invokes is a statement of principle that this court has followed in the past when construing the sometimes opaque language of RSA chapter 281:

> "The remedial nature of workmen's compensation laws dictates that they be liberally construed and that all reasonable doubts be resolved in favor of the injured employee. 12 W. Schneider, Workmen's Compensation § 2552 (3d ed. 1959); *see Hartford Acc. & Indem. Co. v. Duvall*, 113 N.H. 28, 300 A.2d 732 (1973); *Prassas v. Company*, 100 N.H. 209, 211, 123 A.2d 157, 158 (1956); *Mulhall v. Company*, 80 N.H. 194, 199, 115 A. 449, 453 (1921)."

*Ranger v. N.H. Youth Dev. Center*, 117 N.H. 648, 652, 377 A.2d 132, 135 (1977).

■ The defendant's reliance on this language is, however, fundamentally mistaken. As the quotation from *Ranger* indicates, the court has construed the statute so as to favor the interest of the injured employee, to the extent that the statutory language reasonably allows. The principle thus followed does not mean, however, that the statutory construction should change with every case in which such a change might be to an individual claimant's personal advantage. Our obligation is to construe the statute, not to render its lan-

guage meaninglessly protean. Once the statute has been construed, *stare decisis* calls for a reasonable degree of certainty in applying that construction to future cases, subject always to the legislature's power to modify the statute itself.

The petitioner, on the contrary, would ignore *stare decisis* and convert a principle of statutory construction into a new substantive rule of law, providing that benefits under RSA chapter 281 will be calculated by reference to the highest average weekly wage occurring between the date of injury and the moment of payment. The petitioner thus asks us, not to construe the statute, but to rewrite it. He makes his request in the wrong forum.

*Affirmed.*

All concurred.