Original
No. 88-492

PETITION OF DENISE L'HEUREUX
(New Hampshire Department of Labor)

December 13, 1989

*Cullity, Kelley & McDowell*, of Manchester (*Sean P. Gill* on the brief and orally), for the petitioner.

*Wiggin & Nourie*, of Manchester (*Andrew A. Merrill* on the brief and orally), for the respondent, American Mutual Insurance Company.

BATCHELDER, J. This is a petition for certiorari to review an award under the Workers' Compensation Act. On June 6, 1988, the petitioner, Denise L'Heureux, was granted a permanent impairment award in the amount of $7,757.39 by the State Department of Labor (Department). In seeking review of that decision, the petitioner argues that the Department, in calculating her permanent impairment award, erred in utilizing the schedule of benefits in RSA 281:26 as it existed at the date of injury, rather than the schedule of benefits in RSA 281:26 as amended August 21, 1983, subsequent to the date of injury but prior to the determination of permanent impairment. For the following reasons, we reverse and remand.

On March 4, 1982, while employed as a nurse's aide at the Hanover Hill Nursing Home in Manchester, the petitioner sustained an injury to her lower back as the result of a slip and fall. On September 12, 1983, the petitioner was admitted to the New England Baptist Hospital to receive treatment associated with her back injury. On October 24, 1983, the petitioner underwent spinal fusion surgery in an attempt to correct her disorder. Additional treatment was rendered at the New England Baptist Hospital on March 17, 1985. The petitioner again underwent surgery on September 16, 1985, this time to revise the October, 1983 spinal fusion operation. Finally, on September 29, 1987, after repeated attempts to correct the petitioner's condition, the petitioner's physician concluded that "she is not an operative candidate at this time nor do I anticipate that further surgery will give her the hoped for relief." The petitioner made a claim to the Department for a permanent impairment award on April 20, 1988, and on June 6, 1988, the Department approved a single payment permanent impairment award in the amount of $7,757.39. In calculating the award, the Department utilized the schedule of benefits provided by RSA 281:26 as the statute existed at the date of injury. In response to the petitioner's request, a formal hearing was held on November 11, 1988, as required by RSA 281:37.

The Department rendered a decision on November 29, 1988, finding that it was appropriate to utilize the schedule of benefits provided by RSA 281:26, as it existed on the date of injury, in the calculation of the petitioner's permanent impairment award. In support of its decision not to apply the schedule of benefits provided by RSA 281:26 as amended subsequent to the date of the petitioner's injury, the Department stated that "[t]here is no indication in RSA 281:26 that the revision was intended for retrospective application." The revisions to RSA 281:26, *inter alia*, recognized that the loss of

multiple body parts has a cumulative effect on the whole body. RSA 281:26, I-a. Hence, the amendment provided recovery for impairment of the whole body, and it is on this basis that the petitioner now seeks recovery.

New Hampshire's workers' compensation law generally provides two types of benefits. One type, disability benefits, are intended to compensate the injured worker for lost wages. RSA 281:23–25. The second type, permanent impairment awards, or scheduled awards as they are also known, are intended to compensate the injured party for the permanent impairment of the whole body or for the loss of use of one or more body parts. RSA 281:26. These two types of benefits are distinct and unrelated. *Ranger v. N.H. Youth Dev. Center,* 117 N.H. 648, 651, 377 A.2d 132, 134 (1977). The payment of the permanent impairment award "becomes due upon prompt medical disclosure, after maximum medical improvement has been achieved, regarding the loss or the loss of use of the member of the body . . . ." RSA 281:26, III. The permanent impairment awards accrue to the benefit of the injured party "simply by virtue of the loss or loss of the use of a member of the body . . . ." RSA 281:26, II.

In calculating a permanent impairment award, there are two components factored into the equation, the injured party's average weekly wage and the statutorily prescribed number of weeks the injured party is entitled to compensation. RSA 281:26, I. This court has previously held that, when calculating the injured party's average weekly wage, it is the date of prompt medical disclosure of the permanent impairment, and not the date of injury, that controls. *Ranger v. N.H. Youth Dev. Center, supra* at 651, 377 A.2d at 134. The respondent argues, however, that to apply a schedule of benefits other than those provided by RSA 281:26 at the date of injury would be violative of part I, article 23 of the New Hampshire Constitution, which prohibits the retrospective application of law. Although the respondent correctly points out that a retrospective law is one that "creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past . . .," *Woart v. Winnick,* 3 N.H. 473, 479 (1825); *Burrage v. N.H. Police Standards Council,* 127 N.H. 742, 746, 506 A.2d 342, 344 (1986), respondent's reliance on this principle of law is misplaced. In order for the respondent's argument to have merit, we must presume that the petitioner's right to receive benefits, or more importantly the respondent's reciprocal obligation to provide a specific impairment award, accrued at the date of injury and that the application of a

subsequently enacted schedule of benefits would necessarily create a new obligation or impose a new duty. *Id.*

 RSA 281:26, III requires payment of the permanent impairment award only "upon prompt medical disclosure . . . regarding the loss or loss of use of the member of the body." Thus, the employer is under no obligation to make payment until it is determined that the injury is permanent and that further medical procedures would be of no avail. *Petition of Lapinski*, 126 N.H. 772, 776, 497 A.2d 841, 844–45 (1985). Simply put, at the date of injury there is simply no way to predict which injuries will result in permanent impairment and which ones will not. Since the respondent was under no obligation prior to the determination of loss, we find that the application of the schedule of benefits in RSA 281:26, as amended subsequent to the date of injury, does not entail the retrospective application of law.

 The legislature intended the amount of a permanent impairment award to be controlled by the date upon which the permanency of the loss is determined. *Ranger v. N.H. Youth Dev. Center*, 117 N.H. at 651, 377 A.2d at 134. Integral to the computation of the amount of the award is the length of time the injured party is entitled to it. As we have stated before, given the remedial nature of workers' compensation laws, all reasonable doubts will be liberally construed in a manner that favors the injured employee. *Id.* at 652, 377 A.2d at 135 (citing *Hartford Accident & Indem. Co. v. Duvall*, 113 N.H. 28, 300 A.2d 732 (1973)). Accordingly, we hold that the schedule of benefits in effect at the time the determination of the permanency of loss is made must be used in calculating the permanent impairment award. Since the necessary evidence to arrive at an appropriate permanent impairment award was not presented at the hearing, we remand for a further hearing consistent with this opinion.

*Reversed and remanded.*

All concurred.