Original
No. 93-208

PETITION OF NORMAN JEAN
(New Hampshire Department of Labor)

January 25, 1995

334

*Joseph F. McDowell, III, P.A.,* of Manchester (*Richard J. Walsh* on the brief and orally), for the petitioner.

*Wadleigh, Starr, Peters, Dunn & Chiesa,* of Manchester (*Jeffrey H. Karlin* on the brief and orally), for the respondent.

BROCK, C.J. The petitioner, Norman Jean, seeks a writ of certiorari to review the decision of the New Hampshire Department of Labor denying his claim for a permanent partial impairment award. We reverse and remand.

The petitioner suffered a serious back injury in 1982 while he was employed by the respondent, Lechmere Sales. He currently receives total disability benefits and has received a permanent impairment award based on loss of use of his left leg. In 1992, a physician selected by the respondent produced a report that indicated impairment of the petitioner's *right* leg. The petitioner sought an additional permanent impairment award based on his right leg impairment, pursuant to RSA 281-A:32, IX (Supp. 1993). After a hearing was held at the department of labor, the hearings officer denied the petitioner's claim. The petitioner filed a timely motion for reconsideration, which was denied. This petition for certiorari followed. Because permanent impairment decisions of the department of labor before January 1, 1994, were final, RSA 281-A:32, XII (Supp. 1993), *amended by* Laws 1993, ch. 226, certiorari is the petitioner's proper remedy. *Petition of Gunzel,* 124 N.H. 495, 498, 471 A.2d 1189, 1190 (1984).

■ The petitioner argues that the department of labor erred in denying his claim for a permanent impairment award. When we review the department of labor's decision, we will neither make *de novo* findings nor reverse its reasonable findings. *Petition of Markievitz,* 135 N.H. 455, 456, 606 A.2d 800, 801 (1992). We review the decision below

to determine "whether the commissioner acted illegally with respect to jurisdiction, authority or observance of the law, whereby he arrived at a conclusion which could not legally or reasonably be made, or . . . abused his discretion or acted arbitrarily, unreasonably, or capriciously." *Petition of Gunzel*, 124 N.H. at 498, 471 A.2d at 1190.

In 1982, the petitioner injured his back lifting a trash compactor while working at Lechmere. Except for a few short periods, he has been unable to work since that time due to the back injury and other medical problems. The petitioner continues to receive weekly total disability benefits. In August 1987, a permanent impairment award was approved by the department of labor, based on a 25% impairment to the petitioner's left leg. That award is not at issue in the present case.

In 1992, the petitioner submitted to an independent medical examination by Dr. David Nagel at the request of the respondent. *See* RSA 281-A:38 (Supp. 1993). Dr. Nagel reported that the petitioner had "a 23% impairment of the whole person secondary to lumbar spine injury," and a right L5 radiculopathy, which yielded "an additional 19% impairment of the right leg secondary to nerve injury." Dr. Nagel's report did not indicate how the 23% whole person impairment related to the earlier permanent impairment award.

■ We note initially that the department of labor correctly applied the version of the Workers' Compensation Law that was in effect when it made its decision. *See* RSA 281-A:32, IX. The right to a permanent impairment award under this section arises when "the permanency of the loss becomes evident." *Petition of Markievitz*, 135 N.H. at 457, 606 A.2d at 802 (quotation omitted). "[T]he schedule of benefits in effect at the time the determination of the permanency of loss is made must be used in calculating the permanent impairment award." *Petition of L'Heureux*, 132 N.H. 498, 501, 567 A.2d 186, 188 (1989).

The department of labor decision refers to the 1987 permanent impairment award, stating that the reviewing doctor "felt that the [petitioner] had reached a medical end point at that time, and calculated 25% impairment of the left lower extremity." The respondent argues that because the petitioner was found to have reached a medical endpoint at the time he received a permanent impairment award for his left leg, he may not recover for any further permanent impairment. This argument is without merit.

■ RSA 281-A:32, IX refers to "more than one permanent bodily loss," and describes how a permanent impairment award is to be made in circumstances involving more than one such loss. Further, the section states that "[i]njury to the spinal column or spinal cord shall not be construed to permit an award under this section . . . on the basis of more than one permanent loss, unless such injury results in loss of

use of upper or lower extremities." *Id.* The petitioner's present claim of permanent impairment to his right leg involves the "loss of use" of the leg and thus squarely fits into this category. All that is required to avoid a double recovery is for the department of labor to determine what portion of the petitioner's present whole person impairment is in addition to the permanent impairment for which he was compensated in 1987.

██ The petitioner carries the burden of proving that an impairment results from a work-related injury. *Petition of Hyde,* 135 N.H. 425, 427, 605 A.2d 228, 229 (1992); *see* RSA 281-A:2, XI (Supp. 1993). Accordingly, the petitioner must demonstrate not only that there has been an increase in his impairment since his first award, but also that the increase results from the work-related injury. *See* RSA 281-A:2, XI; *Petition of Gunzel,* 124 N.H. at 498–99, 471 A.2d at 1190-91.

The petitioner has suffered from a number of medical ailments during the pertinent period in addition to his back injury, including a stroke, a myocardial infarction, and diabetes. Dr. Nagel noted difficulty in distinguishing the peripheral neuropathy in the petitioner's right leg caused by diabetes from the radiculopathy that might result from his original spinal injury. He further noted, however, that "the motor loss . . . was secondary to the back problem and graded as such." The "back problem" in this context refers to Dr. Nagel's account of the origin of the petitioner's injury: "[H]e injured his low back at work in 1982."

In his decision denying the permanent impairment award, the hearing officer stated:

> In this case, the medical [report] upon which he bases his claim, that of Dr. Nagel, refers to a degenerative process and *makes no reference whatsoever to a work-related injury.* In fact, reviewing the earlier medical record, *there is no connection found* between the lifting incident of November 12, 1982 and the subsequent medical care for degenerative joint disease, spinal stenosis and systemic arthritis.
>
> . . . Any deterioration in his condition since [the first permanent impairment award] is deemed to be degenerative and due to the aging process.

(Emphasis added). We disagree. As previously noted, Dr. Nagel's report specifically referred to the petitioner's "back problem" and the impairment that was secondary to it. The word "secondary" may mean either "of second rank, importance, or value," or "immediately derived from something original, primary or basic." WEBSTER'S THIRD NEW

INTERNATIONAL DICTIONARY 2050 (unabridged 1961). It is clear from a review of Dr. Nagel's report and of the department of labor decision that Dr. Nagel's use of the word "secondary" was intended to mean that the petitioner's present symptoms, at least to some degree, derive from his 1982 work-related injury.

We hold that the determination that there was "no reference to a work-related injury" and "no connection found" between the original injury and present impairment was erroneous and unreasonable. *See Petition of Gunzel*, 124 N.H. at 498, 471 A.2d at 1190. Accordingly, we remand this matter to the department of labor for a *de novo* hearing on the merits to determine what, if any, portion of the petitioner's increased impairment between 1987 and 1992 is a result of his 1982 work-related injury.

*Reversed and remanded.*

All concurred.