U.S. District Court
No. 92-314

DARLENE GELINAS AS ADMINISTRATRIX OF THE ESTATE
OF ROBERT N. GELINAS

v.

STERLING INDUSTRIAL CORPORATION & a.

September 21, 1994

*Shaines & McEachern, P.A.,* of Portsmouth (*Gregory D. Robbins* and *Paul McEachern* on the brief, and *Mr. Robbins* orally), for the plaintiff.

*Devine, Millimet & Branch, P.A.,* of Manchester (*Richard E. Galway* and *William P. Smith, Jr.* on the brief, and *Mr. Galway* orally), for Maine Bonding & Casualty Co.

*Sulloway & Hollis,* of Concord, on behalf of defendant Sterling Industrial Corporation, filed no brief.

HORTON, J. The United States District Court for the District of New Hampshire (*Devine,* J.) has certified questions of law for our consideration under Supreme Court Rule 34.

The questions arise out of a wrongful death action against defendant Sterling Industrial Corporation (Sterling) based on a theory of products liability. The decedent, Robert N. Gelinas, was killed in the course of his employment with National Fence and Granite Company (National Fence) while operating a post-pounding machine manufactured by Sterling. Under the department of labor's order, National Fence's workers' compensation carrier, Maine Bonding and Casualty Co. (Maine Bonding) has been paying weekly compensation of $451.76, of which the department of labor allocated $225.88 to the plaintiff, Darlene Gelinas, as the decedent's widow, and $112.94 each to Benjamin Gelinas, as his son, and Alicen Poitras, as his adopted daughter. Darlene Gelinas, as administratrix of her husband's

estate, and Sterling have entered into a conditional structured settlement of the wrongful death claim and have filed for approval with the district court. The settlement agreement is expressly contingent upon the district court approving it in its entirety, including provisions relating to the disposition of Maine Bonding's lien. Under RSA 281-A:13, II(b) (Supp. 1993), Maine Bonding holds a lien on the settlement for workers' compensation "paid or agreed or awarded." Maine Bonding contests approval of the settlement.

The certified questions of law are:

A. Whether a workers' compensation carrier's lien attaches only to the net recovery of an estate in a wrongful death action, that is, after deduction of those expenses itemized in R.S.A. 556:14 including the fees of the administratrix and attorneys' fees; and if so, whether such attorneys' fees include the fees incurred by the estate in the wrongful death action.

B. Whether a [workers'] compensation insurer has a right to take a "holiday" and offset its obligation to make further [workers'] compensation payments until the sum of [workers'] compensation benefits that would otherwise be payable to the plaintiff exceeds the net third-party settlement under *Tarr v. Republic Corporation,* 116 N.H. 99 (1976), when the plaintiff chooses to accept part of its settlement via deferred annuities.

C. Whether a [workers'] compensation carrier's responsibility for a share of legal fees and costs, pursuant to R.S.A. 281-A:13, IV (previously R.S.A. 281:14, V) applies to sums that the carrier would have had to pay to a claimant after the date of a settlement with a third party, but which the carrier is entitled to set off because the value of the settlement exceeded the existing workers' compensation lien on the date of the settlement.

D. Assuming that Robert N. Gelinas stood in an *in loco parentis* relationship to Alicen Poitras, whether Maine Bonding has any lien for any amounts that it has paid or will pay to Alicen Poitras, in that Robert N. Gelinas died intestate, and Alicen Poitras is not an heir to the Estate, pursuant to R.S.A. [561:1] and R.S.A. [21:20.]

The proposed settlement, as structured, and as restated in the district court's order of transfer, provides:

Plaintiff has received a settlement proposal from Sterling, contingent upon a successful resolution of the legal issues surrounding Maine Bonding's lien claims. The present value of the settlement is approximately $370,000.00[, the] terms of which are as follows:

(a) cash payment at the time of settlement— $150,000.00. This payment will be distributed as follows: attorneys' fees to counsel for the plaintiff, $123,333.33; administratrix fee to Darlene Gelinas of $9,250.00; and reimbursement to counsel of non-recoverable costs of $3,388.02. Of the balance of $14,028.65, Maine Bonding's lien shall attach to this sum; and of the $14,028.65, one-third of the sum, or $4,676.22, shall be remitted to Darlene Gelinas, as payment of Maine Bonding's proportionate share of legal fees incurred in this matter.

(b) $1,400.00 per month for the life of Darlene Gelinas, guaranteed for twenty years, commencing October 1, 1996, and increasing at the rate of three percent, compounded annually[.]

(c) guaranteed lump sums as follows: $10,000.00, payable on October 1, 1994; $20,000.00, payable on October 1, 1999; $25,000.00, payable on October 1, 2004; $125,000.00, payable on October 1, 2009.

■ ■ The United States District Court has jurisdiction to approve this settlement pursuant to RSA 281-A:13, III(a) (Supp. 1993), which mandates that any proposed settlement in a liability action subject to an inchoate workers' compensation payment lien must be approved by the court to be binding. The court is charged with making provisions for the payment of the lien after expenses and costs of the action have been paid. RSA 281-A:13, III(a). Under RSA 281-A:13, IV (Supp. 1993), it is also charged with dividing the obligation for expenses and costs of the action, including attorney's fees, between the employer or its insurance carrier and the employee as justice may require. This provision vests broad discretion in the court to deal with the fairness of the proposed settlement as it affects the lien. *Id.*

The administratrix submits the proposed settlement on essentially a "take it or leave it" basis. Maine Bonding contends that the settlement unfairly affects the lien that will arise on the proceeds, citing *Dimick v. Lewis,* 127 N.H. 141, 497 A.2d 1221 (1985). We note that our responsibility is to answer only those questions certified to us by the district court. Accordingly, we do

not address other issues raised by the parties except to reiterate that the district court has broad discretion to determine the fairness of the proposed settlement in light of the interest of the lien holder, and to determine, whatever is agreed between the plaintiff in the liability action and her attorneys regarding fees, the appropriate amount to be paid by the lien holder.

■ We are first asked, to what does the lien attach? Although the death which triggered the claim occurred in 1987 and compensation was commenced in 1988, no damages have actually been recovered from Sterling yet, and therefore we apply the statutes as they are currently codified in determining lien issues. *Carter v. Liberty Mut. Fire Ins. Co.,* 135 N.H. 406, 408, 605 A.2d 221, 222 (1992). At the time of briefing in this court, Maine Bonding had already paid out roughly $113,000 in compensation benefits. Should the proposed initial payment of $150,000 stand, Maine Bonding would like to see the lien paid off the top. But the lien only attaches to "the amount of damages or benefits recovered which remain after deduction of such of the expenses itemized in RSA 556:14 as are not paid by the employer or the employer's insurance carrier." RSA 281-A:13, II(b). The expenses itemized in RSA 556:14 (1974) include "expenses of recovery" and "expenses of administration." "Expenses of recovery" include attorney's fees, *Martineau v. Waldman,* 93 N.H. 386, 387, 42 A.2d 735, 736 (1945), including those incurred in pursuing the wrongful death action. "Expenses of administration" include appropriate administratrix' and attorney's fees, as approved by the probate court. *See* RSA 554:19 (1974 & Supp. 1993); *Tuttle v. Robinson,* 33 N.H. 104, 118 (1856); *Wendell v. French,* 19 N.H. 205, 209–10 (1848). These expenses come off the top, before there is any *res* to which a lien may attach. Maine Bonding argues that the *res* is established by taking the discounted value of the future payments proposed, a broad definition of "recovery." We reject this approach. The lien is on "the amount of damages or benefits recovered," RSA 281-A:13, II(b), and "[i]t does not apply until the injured plaintiff *actually receives* damages to which he has been adjudged entitled." *Lakin v. Daniel Marr & Son Co.,* 126 N.H. 730, 733, 495 A.2d 1299, 1302 (1985) (emphasis added) (decided under former RSA 281:14, I (Supp. 1983)). As so interpreted, the workers' compensation carrier's lien attaches only to the net recovery of an estate in a wrongful death action.

■ Next, we are asked whether, under the principles set forth in *Tarr v. Republic Corp.,* 116 N.H. 99, 105, 352 A.2d 708, 712–13 (1976) (decided under former RSA 281:14), the compensation

carrier may take a "holiday" from compensation payments until the sum of all payments made and that would otherwise have been made, but for the "holiday," exceeds the net value of the liability settlement. We are asked to consider this in light of the fact that the "net value" of this settlement reflects, in part, deferred payments. We hold that a compensation carrier may take a "holiday" from compensation payments only so long as the net amount *recovered* in the liability action (that is to say, the *res* described in our answer to the first question) exceeds the sum of (1) compensation payments made (and thereby recoverable from the *res*), and (2) compensation payments avoided under the "holiday." Such was the case in *Tarr,* where the proposed settlement called for an immediate one-time payment of over $92,000 and the carrier had made compensation payments of less than $18,000. *Id.* at 101, 352 A.2d at 710. The present case presents a different situation. Under this settlement, net payments actually *recovered* by the estate will not exceed the sum of Maine Bonding's continued compensation payments until the next century. *Tarr* did not contemplate allowing a "holiday" under these circumstances. The approval of a "holiday" in *Tarr* may well have been based on the concern that where there is a liability recovery greater than the existing lien and the compensation carrier has a continuing compensation obligation, absent a "holiday" there is no assurance that the liability recovery will remain available to satisfy the carrier's lien on those continuing payments. Until that situation arises in the present case, a *Tarr* "holiday" is inappropriate. Accordingly, the monthly payments, commencing in 1996, and all lump sums, will be paid to Maine Bonding in satisfaction of the existing lien and a lien for all further disbursements Maine Bonding is required to make, until said liens are fully satisfied. *Bilodeau v. Oliver Stores, Inc.,* 116 N.H. 83, 89, 352 A.2d 741, 745 (1976) (decided under former RSA 281:14). Thereafter, if the plaintiff receives payments beyond that which must be applied to the lien, a *Tarr* "holiday" would be appropriate.

We are asked whether the lien holder's just share of legal fees and costs should be calculated including the "holiday" payments as constituting recovery by the lien holder? Since the determination of the lien holder's just share is uniquely within the broad discretion of the district court, we do not attempt to state a rule of law on this question. Since the "holiday" is of economic benefit to the compensation carrier, substituting for payments that otherwise would have to be made, it hardly seems unjust, without more, to have the carrier pay for the legal costs of obtaining the benefit.

Finally, we are asked to determine the status of the lien for compensation payments made on behalf of Alicen Poitras. Alicen is not the biological daughter of the deceased employee. In the authorization for compensation, under which Maine Bonding has been making payment, Alicen is listed as the adopted daughter of the deceased, and one fourth of the weekly payment is made for her benefit. The plaintiff now asserts that Alicen is a stepdaughter, not an adopted child, of the deceased, and, as such, will not share in the wrongful death recovery because the decedent died intestate and there is no provision in our intestate laws for stepchildren. Maine Bonding suggests that the lien status on Alicen's payments must await the probate court's determination of whether she enjoys an intestate share.

■ Once again we look to the basics of the lien. There is no effective lien until there is a recovery to which it may attach. Whether or not a lien will arise covering payments made to Alicen will depend on whether she receives a part of the recovery. *See Tarr,* 116 N.H. at 104, 352 A.2d at 712. In other words, there is no general claim on wrongful death damages that permits a lien on one party's recovery to reimburse payments made for the benefit of another party. *See id.; see also* RSA 281-A:13, II(b). So, the resolution of this issue is based on whether or not Alicen, in fact, shares in the proceeds of the settlement. This will depend on whether the probate court determines that she is entitled to an intestate share. The determination of adoption for compensation purposes will not be controlling for intestate share purposes. *See MacArthur v. Nashua Corp.,* 126 N.H. 353, 493 A.2d 1126 (1985) (dependency for workers' compensation purposes requires only *in loco parentis* relationship).

*Remanded.*

All concurred.