Compensation Appeals Board
No. 2003-122

APPEAL OF ANN MILES BUILDER, INC.
(New Hampshire Compensation Appeals Board)

Argued: October 15, 2003
Opinion Issued: December 8, 2003

*Bouchard & Kleinman, P.A.*, of Hampton (*Paul B. Kleinman* and *Lisa-Dawn Bollinger* on the brief, and *Mr. Kleinman* orally), for the petitioner.

*Shaines & McEachern, P.A.*, of Portsmouth (*Gregory D. Robbins* on the brief and orally), for the respondent.

DUGGAN, J. The petitioner, Ann Miles Builder, Inc. (AMB), appeals a decision of the New Hampshire Compensation Appeals Board (board) that the respondent, Michael Veltsos, was not an independent contractor, but instead was AMB's employee for purposes of the Workers' Compensation Law. *See* RSA 281-A:2, VI (1999) (amended 2001). We affirm.

AMB is a small construction company involved in land development, restoration and new construction. Michael Veltsos Construction and Home Building, LLC, was formed by Veltsos in approximately 1995. Veltsos' business has a federal employer identification number and in the year 2000, he reported that his income was derived from his business. Between June and December of 2000, Veltsos provided services to AMB in connection with a building project. Ann Miles, the sole proprietor of AMB, served as the general contractor on the project.

When Veltsos first worked for AMB in the spring of 2000, he provided a certificate of liability insurance. Veltsos brought his own truck, tools and laborers to the jobsite where they unloaded and sorted lumber. AMB closely monitored the work done at the site and required Veltsos to keep a timesheet. Veltsos was paid by the hour and his checks were made payable to "Michael Veltsos Construction." Veltsos, in turn, paid his own laborers.

Veltsos provided services to AMB for a second time near the end of September 2000. Again, Veltsos turned in a timesheet and was paid by the hour. At this point, however, the checks AMB gave to Veltsos were made payable to Veltsos individually. Veltsos continued to pay his own laborers. On October 3, 2000, Miles arrived at the jobsite and found that no work had been done. She informed Veltsos that his laborers were not to return to work. Veltsos himself also stopped working for AMB at that time.

According to Veltsos, his relationship with AMB changed when he provided services for a third time beginning around October 30, 2000. Although the certificate of liability insurance that Veltsos originally provided to AMB had expired, he did not proffer an updated certificate. Veltsos was paid by the hour and the checks he received were made payable to Veltsos individually. Veltsos did not bring his own laborers to the jobsite and the only tools that he brought were his saw and tool belt.

Veltsos testified that he had no control over how the job was accomplished during this time period. Miles, on the other hand, testified that she was on the jobsite for approximately two hours each day and advised Veltsos on the construction plans but did not tell him how to do his job. In addition to framing, Miles asked Veltsos to install a handicapped bath and shower stall, install windows and put up a suspended ceiling. Veltsos also testified that Miles required all laborers to arrive at the site by 7:30 a.m.

On December 4, 2000, Veltsos injured his neck and back when he fell approximately twelve feet and landed on a concrete floor. He filed a claim for workers' compensation that was denied by AMB on the basis that an employer-employee relationship did not exist. Veltsos appealed and a hearing was held at the New Hampshire Department of Labor. The hearing officer found that Veltsos was an independent contractor and denied his claim for benefits.

Veltsos appealed and received a *de novo* hearing before the board. The board found that an employer-employee relationship existed and ordered AMB to compensate Veltsos. In its decision, the board relied upon RSA 281-A:2, VI (b)(1) and presumed that because Veltsos worked for pay for AMB, he was an employee. The board noted, however, that Veltsos' status as an employee could be rebutted if AMB proved all five factors set forth in the statute. The board found that AMB had proven only four of the five factors, and thus failed to rebut the presumption. The board also ruled, in its denial of AMB's motion for rehearing, that: "It is the panel's belief that the legislature intended to create a presumption and place the burden of proof concerning a claimant's employment status on the party challenging his status as an employee. Here, that burden is placed on the employer." This appeal followed.

We will not disturb the board's decision absent an error of law, or unless, by a clear preponderance of the evidence, we find it to be unjust or unreasonable. *Appeal of CNA Ins. Co.*, 148 N.H. 317, 319 (2002). AMB argues that the board erred as a matter of law when it ruled that AMB had the burden of proving Veltsos' employment status. Veltsos, on the other

hand, argues that the board did not err and, if it did, any error was harmless.

This court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Appeal of Routhier*, 143 N.H. 404, 405 (1999). When the issue raised presents a new question of statutory construction, we begin our analysis with an examination of the statutory language. *Id.* "Although we give undefined language its plain and ordinary meaning, we must keep in mind the intent of the legislation, which is determined by examining the construction of the statute as a whole, and not simply by examining isolated words and phrases found therein." *Appeal of Currin*, 149 N.H. 303, 306 (2003) (quotation omitted). "[W]e will not consider what the legislature might have said or add words that the legislature did not include." *Routhier*, 143 N.H. at 406 (quotation omitted). "Where the statutory language is ambiguous or where more than one reasonable interpretation exists, we review legislative history to aid in our analysis." *Id.* (quotation omitted).

We begin by examining RSA 281-A:2, VI (b)(1), which provides that "any person ... who performs services for pay for an employer, is presumed to be an employee." This presumption, however, may be rebutted by proof that an individual meets all of the following criteria:

(A) The person possesses or has applied for a federal employer identification number or social security number, or in the alternative, has agreed in writing to carry out the responsibilities imposed on employers under this chapter.

(B) The person has control and discretion over the means and manner of performance of the work in achieving the result of the work.

(C) The person has control over the time when the work is performed, and the time of performance is not dictated by the employer. However, this criterion does not prohibit the employer from reaching agreement with the person as to completion schedule, range of work hours, and maximum number of work hours to be provided by the person . . . .

(D) The person holds himself or herself out to be in business for himself or herself.

(E) The person is not required to work exclusively for the employer.

RSA 281-A:2, VI (b)(1).

■ A plain reading of the statute indicates that the legislature intended to create a presumption that any person who provides services for pay for an employer is an employee. This presumption can be rebutted, however, "by proof" that the individual meets the five criteria set forth above. *Id.* Because the phrase "by proof" does not specify the quantum of evidence that must be presented in order to rebut the presumption, we conclude that the statute is ambiguous. *See* 2 J. STRONG, MCCORMICK ON EVIDENCE § 336, at 409 (5th ed. 1999) (stating that "proof" is an ambiguous word). To resolve the ambiguity, we look to the legislative history of RSA 281-A:2, VI (b)(1). *See Routhier,* 143 N.H. at 406.

An examination of the legislative history of RSA 281-A:2, VI (b)(1) reveals that the provisions at issue were proposed in 1995 as amendments to the Workers' Compensation Law. *See* N.H.H.R. BILLS, HB 649-FN-LOCAL (1995). At a hearing to discuss HB 649-FN-LOCAL, Representative Hawkins remarked:

> What we're trying to get at are the individuals that are going to an employer and the employer says "you've got to be an independent contractor, but I want you to come into work at 8:00 a.m., go home at 4:00 in the afternoon, and have a half an hour for lunch, you cannot work over 40 hours, we're going to pay you 'X' number of dollars, and the job has got completed [*sic*] by such and such."

HEARING ON HB-649-FN-LOCAL BEFORE THE SENATE COMM. ON INS. at 3 (April 19, 1995). In addition, Martin Gross of the American Insurance Association testified that a major problem had developed whereby "a person who was hired to do work somehow is categorized as an independent contractor rather than an employee and in consequence, loses workers' compensation coverage." *Id.* at 6.

When the bill was introduced in the Senate, Senator King stated: "This [bill] is necessary because of the confusion of whether or not independent contractors are required to be covered under workers' compensation." N.H.S. JOUR. 625 (1995). Senator King further stated: "This bill will help to protect employees whose employers who [*sic*] don't want to pay for workers' compensation and try to get around it by classifying employees as independent contractors." *Id.*

In analyzing the statute's legislative history, we are mindful that: "We construe provisions of the Workers' Compensation Law liberally, resolving all reasonable doubts in statutory construction in favor of the injured employee in order to give the broadest reasonable effect to its remedial purpose." *Currin,* 149 N.H. at 306 (quotation omitted).

■ The history of RSA 281-A:2, VI (b)(1) reflects the legislature's intent to prevent abuse of the Workers' Compensation Law by employers that classify employees as independent contractors in order to avoid compensating them if they are injured on the job. Because we conclude that the legislature intended to provide increased protection to employees, we hold that the employer bears both the burden of producing evidence and the burden of persuasion on all five of the criteria set forth in the statute. *See Cunningham v. City of Manchester Fire Dep't*, 129 N.H. 232, 237 (1987) (holding that RSA 281:2, V-a shifts the burden of persuasion in order to effectuate the strong social policy concerns underlying the statute). If the employer proves all five of the criteria by a preponderance of the evidence, then the presumption disappears and the employee retains the ultimate burden of proof. *See id.* at 238-39. If, however, the employer fails to prove all five of the criteria by a preponderance of the evidence, then the presumption remains and the board must find as a matter of law that the individual was an employee of the employer.

In this case, the board specifically stated: "It is the panel's belief that the legislature intended to ... place the burden of proof concerning a claimant's employment status on the party challenging his status as an employee. Here, that burden is placed on the employer." We are troubled by the last sentence of the board's ruling, which seems to indicate that the board interpreted the statute to automatically shift the ultimate burden of persuasion to the employer. We make clear today that, in cases where the employer rebuts the presumption by proving all five of the criteria listed in the statute by a preponderance of the evidence, the presumption disappears and the employee bears the ultimate burden of persuasion.

Finally, Veltsos argues that even if the board misinterpreted RSA 281-A:2, VI (b)(1), any error was harmless. "Where it appears that an error did not affect the outcome below, or where the court can see from the entire record that no injury has been done, the judgment will not be disturbed." *In re Tracy M.*, 137 N.H. 119, 125-26 (1993) (quotation omitted).

The board found that AMB failed to prove that Veltsos "had control and discretion over the means and manner of performance of the work, therefore the presumption of an employee-employer relationship remain[ed]." In reaching this conclusion, the board relied upon several pieces of evidence that were before it. First, the board noted that Veltsos testified that Miles provided daily direction and oversight of his work. The board further noted that Miles "clearly felt she had the right to fire any individual on the jobsite should she be dissatisfied with their job

performance or the attitude they displayed." Moreover, upon termination, the terminated individual would be paid only for the hours actually worked. In addition, the board relied upon Miles' testimony that she "felt that Mr. Veltsos had the ability to do the framing work but not the expertise needed to make decisions regarding how the work was to be accomplished."

Based upon the evidence set forth above, the board reasonably concluded that AMB failed to prove all five of the criteria listed in the statute by a preponderance of the evidence. Thus, the board correctly found that as a matter of law Veltsos was an employee of AMB. We therefore affirm the board's decision ordering AMB to compensate Veltsos for his work-related injuries.

*Affirmed.*

BROCK, C.J., and BRODERICK, NADEAU and DALIANIS, JJ., concurred.