Compensation Appeals Board
No. 2009-362

APPEAL OF MICHAEL LANGENFELD
(New Hampshire Compensation Appeals Board)

Argued: February 18, 2010
Opinion Issued: April 8, 2010

*Bernard & Merrill, PLLC*, of Manchester (*Eric P. Bernard* on the brief and orally), for the petitioner.

*Law Offices of John B. Schulte*, of Manchester (*John B. Schulte* on the brief and orally), for the respondent.

DALIANIS, J. The petitioner, Michael Langenfeld, appeals a decision of the New Hampshire Compensation Appeals Board (board) ruling that he was not entitled to be reimbursed for the $72,461.90 he incurred in legal fees and costs and applying the 2005 version of RSA 281-A:44 to award him

interest on his overdue medical bills. *See* RSA 281-A:44 (Supp. 2009) (hereinafter, 2005 version of RSA 281-A:44). We reverse and remand.

## I. Background

The record reveals the following facts. On June 20, 1990, when the petitioner was twenty-one years old, he sustained a work-related injury that resulted in paraplegia. The respondent, Liberty Mutual Insurance Company (the carrier), was the employer's insurer. Since the injury, the petitioner has used a wheelchair and has required multiple medical procedures and numerous prescription medications.

In 1991, the petitioner brought a diversity action in federal court to recover damages against various third parties whom he alleged were responsible for the accident. *See* RSA 281-A:13, I (Supp. 2009). On June 24, 1994, the federal court approved a structured settlement, which had a then present value of $687,500.00. The federal court determined that, based upon the compensation, medical, hospital and remedial care for which the carrier had already paid, the carrier was entitled to a lien of $367,344.00, less its pro rata share of attorney's fees and expenses. *See* RSA 281-A:13, I(b). The federal court reasoned that because the carrier's lien represented 53.43% of the present value of the settlement, the carrier was responsible for 53.43% of the petitioner's attorney's fees and costs.

The petitioner claimed attorney's fees of $229,166.67 (one-third of the present value of the settlement) and $8,818.04 in costs. The federal court calculated that the carrier's share of the attorney's fees was $122,447.99 (53.43% of $229,166.67), and its share of costs was $4,711.64 (53.43% of $8,818.04). The total present value amount of the carrier's lien, therefore, was $240,184.37 ($367,344.00 less the sum of $122,447.99 and $4,711.64). The net amount of the settlement to the petitioner was, thus, $209,330.92 ($687,500.00 less the sum of $229,166.67 and $8,818.04 and $240,184.37).

As a result of the third party settlement, the carrier was temporarily relieved of its liability for compensation payments from the date of the court's approval of the settlement until the sum of all payments due exceeded the net value of the settlement. *See Gelinas v. Sterling Indus. Corp.*, 139 N.H. 14, 18-19 (1994). This period of time is commonly referred to as the insurer's "holiday" from liability. *See Knapp v. Tenn. Gas Pipeline*, 149 N.H. 740, 741 (2003). "[A] compensation carrier may take a 'holiday' from compensation payments only so long as the net amount recovered in the liability action . . . exceeds the sum of (1) compensation payments made . . . , and (2) compensation payments avoided under the 'holiday.' " *Gelinas*, 139 N.H. at 19 (emphasis omitted). A carrier's "holiday" is against payment of future compensation benefits for medical expenses as

they continue to accrue. *Knapp*, 149 N.H. at 741. In this case, the carrier's "holiday" was equal to $209,330.92 (the net amount of the third party settlement).

On December 29, 2005, the petitioner sought a hearing before the department of labor to determine when the carrier's $209,330.92 holiday was exhausted. He also sought additional reimbursement for the legal fees he incurred to secure the third party settlement and, as a result, the carrier's holiday. In December 2008, the board ruled that the carrier's holiday was exhausted on October 16, 2000, when the petitioner's qualifying medical expenses reached approximately $209,000.00.

The board also ordered the carrier to reimburse the petitioner $72,461.90 for legal fees and costs incurred to secure the carrier's holiday. Of this amount, $69,776.97 was intended to reimburse the petitioner for legal fees, and $2,684.93 was intended to reimburse him for costs. Because the amount of the carrier's holiday, $209,330.92, was 30.44813 % of the total present value of the settlement, $687,500.00, the board multiplied the total legal fees incurred by the petitioner, $229,166.67, by .3044813, which equals $69,776.97, and multiplied the total costs incurred by the petitioner, $8,818.04, by .3044813, which equals $2,684.93. The board also found that, pursuant to the version of RSA 281-A:44 in effect as of June 1994 (the date of the third party settlement), the petitioner was entitled to interest at a rate of 10% on the amount of his overdue bills as well as on the amount of the legal fees incurred to secure the third party settlement. *See* RSA 281-A:44 (1999) (amended 2001, 2003, 2005).

The carrier filed a motion for reconsideration, which the board partially granted. Upon reconsideration, the board determined that it was bound by the federal court's decision with respect to the attorney's fees and costs that the petitioner incurred. Accordingly, the board reversed its decision requiring the carrier to reimburse the petitioner for $72,461.90 in legal fees and costs and to pay interest at a rate of 10% on this amount.

The board also reversed its decision regarding the version of the workers' compensation act that applied to the petitioner's case. The board originally had decided that the 1994 version applied; upon reconsideration, the board ruled that the 2005 version applied because this was when the petitioner requested an initial hearing and *de novo* appeal. In applying the 2005 version of the workers' compensation act, the board clarified that, pursuant to RSA 281-A:44, V, the interest awarded to the petitioner on overdue medical bills "would only apply to out-of-pocket expenses which the [petitioner] paid first and which then qualified for reimbursement." The board also clarified that the applicable interest rate was as set forth in RSA 281-A:44, II. *See* RSA 281-A:44, II (rate of interest shall be calculated at

the same rate as for judgments). At the parties' request, the board stayed its decision pending the resolution of this appeal.

## II. Analysis

The petitioner argues that the board erred when it reversed its prior decision requiring the carrier to pay him $72,461.90 in legal fees and costs and applied the 2005 version of the workers' compensation act. We will overturn the board's decision only for errors of law, or if we are satisfied by a clear preponderance of the evidence before us that the decision is unjust or unreasonable. *Appeal of Dean Foods*, 158 N.H. 467, 471 (2009); *see* RSA 541:13 (2007). The board's factual findings are *prima facie* lawful and reasonable. *See* RSA 541:13. As the appealing party, the petitioner bears the burden of proof. *See Appeal of Dean Foods*, 158 N.H. at 471.

### A. Reimbursement for Legal Fees and Costs

■ We first address whether the board erred when it ruled that the petitioner was not entitled to additional reimbursement for the legal fees and costs he incurred to secure the third party settlement. We have recognized that an insurer's ability to take a holiday from future compensation is of economic benefit to the insurer. *Knapp*, 149 N.H. at 743. "The third-party recovery results in a contemporaneous extinguishment of a liability of the compensation insurer. That constitutes a present benefit redounding to the compensation insurer, in no way rendered less immediate or tangible because the extent of the eliminated liability was contingent in some respects." *Id.* (quotation and brackets omitted).

The carrier in this case appears to accept its obligation to pay a share of fees and costs associated with the holiday. The carrier does not dispute this obligation, but instead contends that the federal court decision already ordered it to pay these fees and costs. We disagree with the carrier's interpretation of the federal court's order.

■ The interpretation of a court order is a question of law, which we review *de novo. In the Matter of Salesky & Salesky*, 157 N.H. 698, 702 (2008). In construing a court order, we look to the plain meaning of the words used in the document. *Id.* at 703. We construe subsidiary clauses so as not to conflict with the primary purpose of the trial court's decree. *Id.* As a general matter, a court decree or judgment is to be construed with reference to the issues it was meant to decide. *Id.*

Several provisions in the federal court's order make clear that the carrier's lien offset payments the carrier had already made and did not include the carrier's holiday from future expenses. *See* RSA 281-A:13, I(b) (carrier entitled to a lien "to the extent of the compensation, medical,

hospital, or other remedial care already paid or agreed or awarded to be paid"). For instance, the federal court's order explains that, among the issues the court was to decide, was whether the petitioner should be required to pay the carrier's lien at the time of settlement or when he received his final lump sum payment in twenty years. The carrier contended that the petitioner's proposal that the carrier be paid in twenty years failed "to adequately provide for reimbursement of the workers' compensation benefits paid to [the petitioner]." Similarly, while the petitioner disputed the amount of the carrier's asserted lien of $367,344.00, the dispute centered upon whether certain payments the carrier had already made should be included in the lien. As the federal court explained in its order, "[t]he statutory lien was created to prevent double recovery by providing *reimbursement* to an employer (or the employer's insurance carrier) from proceeds from third party tortfeasors." (Emphasis added.)

■ The plain meaning of the section of the order in which the federal court calculated the amount of the carrier's pro rata share of attorney's fees and costs reveals that the court calculated the carrier's pro rata share based only upon the value of its lien. The federal court did not consider the carrier's pro rata share of fees and costs due for the holiday the carrier would be able to exercise in the future. As previously discussed, the federal court calculated the carrier's pro rata share of fees and costs based upon the percentage the lien represented of the total present value of the settlement. Because the carrier's lien of $367,344.00 represented approximately 53% of the total present value of the settlement, the court ruled that the carrier was responsible for 53% of the petitioner's fees and costs. At no time did the federal court discuss the carrier's holiday or calculate the carrier's pro rata share of the fees and costs associated with it. Accordingly, we reject the carrier's assertion that the fees and costs it has already paid pursuant to the federal court order include its share of fees and costs for its holiday.

■ Alternatively, the carrier argues that the board lacked jurisdiction to award the petitioner additional attorney's fees and costs. The carrier asserts that because the federal court "had jurisdiction to begin with," this jurisdiction "cannot be superseded because the Petitioner has many years later rethought the result and would like a new one." To the contrary, the federal court's diversity jurisdiction terminated upon issuance of its final order. Nothing in the final order indicated the federal court's intent to assert continuing jurisdiction. Moreover, RSA 281-A:13, IV grants concurrent jurisdiction to the board over the division of attorney's fees and costs when the injured employee has entered into a third party settlement. RSA 281-A:13, IV provides:

Whenever there is a recovery against a third person under paragraph I, II, or III, the commissioner, the arbitrator, or the superior court, as the case may be, shall order such division of expenses and costs of action, including attorneys' fees, between the employer or the employer's insurance carrier and the employee as justice may require.

Because we conclude that the federal court did not order the carrier to reimburse the petitioner for the fees and costs associated with the holiday, we reverse the board's decision on this issue and remand for the board to determine the carrier's pro rata share of the fees and costs associated with its $209,330.92 holiday.

### B. Interest Award

We next address whether the board erred when it awarded interest pursuant to the 2005 version of RSA 281-A:44. Under the 2005 version of RSA 281-A:44, "interest on awards for medical, hospital, and remedial care shall be payable only on amounts which have been paid directly by the employee" and "shall be computed from the date of such payment." RSA 281-A:44, V. Moreover, pursuant to the 2005 version of RSA 281-A:44, the rate of interest "shall be calculated at the same rate as for judgments under RSA 336:1, II." RSA 281-A:44, II.

The petitioner contends that the version of RSA 281-A:44 that was in effect when the carrier's holiday expired in October 2000 should govern. Under that version of RSA 281-A:44, the board could award interest at a rate of 10% on "that portion of any award the payment of which is contested," and could compute interest "from the date of injury." RSA 281-A:44, I (1999) (hereinafter, 2000 version of RSA 281-A:44, I). Additionally, the 2000 version of RSA 281-A:44, I, did not limit an interest award to amounts the injured employee paid directly. *See id.*

Resolving this issue requires statutory interpretation. Although we review the board's factual findings deferentially, we review its statutory interpretation *de novo. Appeal of Jenks*, 158 N.H. 174, 177 (2008). This court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Id.* When the issue raised presents a new question of statutory construction, we begin our analysis with an examination of the statutory language. *Appeal of Ann Miles Builder*, 150 N.H. 315, 318 (2003). While we give undefined language its plain and ordinary meaning, we must keep in mind the intent of the legislation, which is determined by examining the construction of the statute as a whole, and not simply by examining isolated words and phrases found therein. *Id.* We will not consider what the legislature might have said

or add words that the legislature did not include. *Id.* Additionally, we construe the workers' compensation statute liberally, resolving all reasonable doubts in statutory construction in favor of the injured employee in order to give the broadest reasonable effect to its remedial purpose. *Appeal of Belair*, 158 N.H. 273, 276 (2009).

■ "As a general rule, the rights and liabilities of the parties in a workers' compensation case are determined by the law in effect on the date of the injury." *Appeal of Silk*, 156 N.H. 539, 541 (2007). For example, we have held that the law in effect on the date of the employee's injury, rather than at the time of total disability, governs an employee's entitlement to disability benefits for a recurring injury. *Id.*; *see Appeal of Cote*, 144 N.H. 126, 128-29 (1999). When we have held that the law in effect on a date other than the date of injury governs, it is because a statutory provision or other indication of legislative intent requires us to depart from the general rule. *Appeal of Silk*, 156 N.H. at 541; *see Petition of L'Heureux*, 132 N.H. 498, 500-01 (1989) (permanent impairment award is governed by law in effect on date permanency of loss becomes apparent).

Our decision in *Appeal of Silk* is dispositive. In that case, the employee had suffered a compensable injury in 2000. *Appeal of Silk*, 156 N.H. at 540. The board awarded her benefits in 2004. *Id.* Thereafter, the employee sought fees and costs relying upon the version of RSA 281-A:44, I, that was in effect in 2000 (the date of her injury). *Id.* The 2000 version and the 2004 version of RSA 281-A:44, I, differed with respect to when an employee was deemed to "prevail," entitling the employee to reasonable attorney's fees and costs. *Id.*

We held that the 2000 version applied. *Id.* at 541, 542. We explained that attorney's fees and costs "are part of an overall legislative scheme" that included "the type and amount of benefits an injured worker may receive." *Id.* at 542. We saw "no principled reason to distinguish an award of attorney's fees from disability benefits," and, thus, applied the general rule that the statutory version in effect as of the employee's date of injury governed. *Id.* at 541, 542.

The petitioner concedes the general rule, but contends that it does not apply to this case. He asserts that our "prior decisions require that the Board apply the . . . statute in effect when [the carrier's] obligation to pay[] arose which was on October 16, 2000, when the holiday from the third-party recovery was exhausted." (Quotation and ellipses omitted.)

■ The petitioner relies principally upon our decisions in *Petition of Markievitz*, 135 N.H. 455, 457-58 (1992), and *Petition of L'Heureux*, 132 N.H. at 501. His reliance upon these cases is misplaced. Neither case concerned an award of interest under RSA 281-A:44. Rather, both ad-

dressed the amount of a permanent impairment award. *See Petition of Markievitz*, 135 N.H. at 457-58; *Petition of L'Heureux*, 132 N.H. at 501. As we explained in *Appeal of Silk*, 156 N.H. at 541, our conclusion that a permanent impairment award is governed by the law in effect on the date the permanency of loss becomes apparent "is derived from statutory construction." Because "[t]here are no comparable statutory provisions or indications of legislative intent" in the context of an award of interest in a workers' compensation case that would justify a departure from the general rule, we hold, as we held in *Appeal of Silk*, that the version of RSA 281-A:44 in effect as of the employee's date of injury (here June 1990) governs. *Appeal of Silk*, 156 N.H. at 541, 542; *see* RSA 281-A:44 (Supp. 1989) (providing that if employee prevails on appeal, employee is entitled to 6% interest, computed from 30 days after award by the commissioner, on that portion of any award the payment of which was contested).

In arguing for a contrary result, the carrier contends that the board did not err when it retroactively applied the 2005 version of RSA 281-A:44 to this case. Specifically, the carrier contends that retroactive application of RSA 281-A:44, II, V was proper because these provisions are remedial in nature and applying them retroactively promotes justice.

■ We have long held that statutes are presumptively intended to operate prospectively. *Appeal of Silk*, 156 N.H. at 542. When the legislature is silent as to whether a statute should apply prospectively or retrospectively, as is the case here, our interpretation turns upon whether the statute affects the parties' substantive or procedural rights. *Id.* When a statute is remedial or procedural in nature, it may be applied to cases pending at the time of enactment. *Id.* If application of a new law would adversely affect an individual's substantive rights, however, it may not be applied retroactively. *Id.* Nevertheless, in the final analysis, the question of retrospective application rests upon a determination of fundamental fairness because the underlying purpose of all legislation is to promote justice. *Id.*

Our decision in *Appeal of Silk* is instructive. In that case, the carrier argued that the 2003 amendment to RSA 281-A:44, I, which, among other things, changed the category of claimants entitled to collect attorney's fees and costs, was remedial in nature and, thus, applied retroactively. *Id.* at 542; *see* Laws 2003, 99:2. We disagreed, holding that RSA 281-A:44, I, affected the substantive rights of parties in part because the remedies under RSA 281-A:44, I, were "inextricably intertwined with other substantive benefits in the workers' compensation setting." *Appeal of Silk*, 156 N.H. at 543.

Although *Appeal of Silk* concerned an award of attorney's fees and costs pursuant to RSA 281-A:44, I, and this case concerns an award of interest

pursuant to RSA 281-A:44, II, V, our rationale in *Appeal of Silk* applies equally here. As with attorney's fees and costs, an award of interest in a workers' compensation case affects the substantive rights of the parties and is "inextricably intertwined with other substantive benefits in the workers' compensation setting." *Id.* at 543.

Interest is available as a remedy to an injured employee under the 2005 version of RSA 281-A:44 pursuant to RSA 281-A:44, I(a), which provides, in pertinent part: "In any dispute over the amount of the benefit payable under this chapter which is appealed to the board or supreme court or both, the employee, if such employee prevails, shall be entitled to reasonable counsel fees and costs as approved by the board or court and interest on that portion of any award the payment of which is contested." It is also available under: (1) RSA 281-A:44, III "on awards for disability indemnity benefits"; (2) RSA 281-A:44, IV for "a scheduled permanent impairment" award; and (3) RSA 281-A:44, V for "awards for medical, hospital, and remedial care." RSA 281-A:44, I, was amended and RSA 281-A:44, III, IV and V were added by the legislature in 2003. *See* Laws 2003, 99:2.

■ In this way, interest, like an award of attorney's fees and costs, is an integral part of the substantive benefits available to injured employees. Accordingly, paragraphs II and V to RSA 281-A:44 are, therefore, substantive in nature and apply only prospectively. *See Appeal of Silk*, 156 N.H. at 542-43. Having determined that the board erred when it applied the 2005 version of RSA 281-A:44 and that, instead, the version of RSA 281-A:44 in effect in June 1990 applies to this case, we remand to the board to determine the interest to be awarded the petitioner for his overdue medical bills.

*Reversed and remanded.*

BRODERICK, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.