Banking Department
No. 2010-864

APPEAL OF COUNTRYWIDE HOME LOANS, INC.
(New Hampshire Banking Department)

Argued: October 13, 2011
Opinion Issued: December 28, 2011

*Sulloway & Hollis, PLLC,* of Concord (*Martin P. Honigberg* on the brief and orally), and *Goodwin Procter LLP,* of Boston, Massachusetts (*Brook L. Ames* on the brief), for the petitioner.

*Atwater Law,* of Rye (*Krista Atwater* on the brief), and *Mary Stewart Law, PLLC,* of Concord (*Mary Frances Stewart* on the brief and orally), for the respondent.

DUGGAN, J. The petitioner, Countrywide Home Loans, Inc. (Countrywide), appeals an award by the Commissioner of the New Hampshire Banking Department to the respondent, Rachel Nicholson (the borrower), based upon claims under the Consumer Protection Act. *See* RSA ch. 358-A (2009 & Supp. 2011). The borrower cross-appeals the amount of the award. We vacate the award.

The record supports the following facts. In January 2005, the borrower contacted Countrywide in order to obtain a mortgage to purchase property located in Manchester. The borrower spoke with two Countrywide agents who informed her that they would investigate and present her the "best [financing] program." At a hearing before the commissioner of the banking department, the borrower testified that in February 2005, the agents orally approved her for a 30-year fixed rate mortgage loan at 6% interest. She then submitted a loan application seeking the amount of $202,730.00.

During this process, Countrywide sent the borrower several forms, including a Lock-In Agreement, Notification of Underwriting Approval and Closing Conditions, and a Truth in Lending Disclosure Statement. Each of these documents specified the details of the 6% fixed rate mortgage loan that the borrower had discussed with the agents. The Notification of Underwriting Approval stated in bold:

> **NOTIFICATION OF UNDERWRITING APPROVAL IS LENDER'S DETERMINATION OF YOUR ABILITY TO MEET THE FINANCIAL OBLIGATIONS OF THE LOAN. IT IS NOT A COMMITMENT TO MAKE A LOAN AT ANY PARTICULAR RATE OR TERMS OR FOR ANY PARTICU- LAR PERIOD OF TIME, NOR DOES IT GUARANTEE THE AVAILABILIY OF THE TYPE OF LOAN FOR WHICH**

UNDERWRITING APPROVAL IS GIVEN. *SUCH A COM-MITMENT CAN BE OBTAINED ONLY THROUGH EXECU-TION OF LENDER'S LOCK-IN AGREEMENT.*

(Emphasis added.) The borrower signed the Lock-In Agreement. Based upon the emphasized language above, and her previous discussions with the agents, she believed Countrywide had committed itself to the terms of her requested loan. Closing was scheduled for April 27, 2005.

Thereafter, the borrower spoke with agents on a weekly basis regarding the home purchase and the loan. The agents did not raise any problems with the loan application until April 25, 2005, two days before the scheduled closing date. On that day, despite the fact that there were no changes in the borrower's employment status or credit since the application had been filed, the agents informed her that Countrywide would not be able to grant a fixed interest loan for the amount she needed. They informed her that to purchase the home, she would need to apply for two different loans.

The borrower testified that the agents told her that the change in the loan terms was temporary and that the new loans would be modified within six months to a fixed rate mortgage. They promised to follow up with her to ensure she received the fixed rate loan. On the scheduled closing date, as instructed by the agents, the borrower applied for two new loans: a first mortgage loan in the amount of $157,500 with a fixed interest rate of 7.875% for three years and interest adjusting periodically thereafter, and a second mortgage loan in the amount of $52,500.00 with a fixed interest rate of 10.75% and a balloon payment of the remaining principal after fifteen years. That same day, Countrywide approved the loans and the borrower executed the mortgage and the note for both loans.

In late 2005, the borrower made late payments on the second mortgage and later missed payments on the first mortgage. On October 17, 2008, she filed a consumer complaint with the banking department, alleging that Countrywide misled her about the terms of the mortgage loans. The banking department investigated the allegations and issued an April 7, 2009 letter to the borrower, signed by a hearings examiner, in response to the complaint stating: "It appears that [Countrywide has] sufficiently addressed your complaint. The explanation is fair and reasonable and therefore, the institution is within its rights." The letter concluded: "At this time, the Department is not considering taking enforcement action against this company regarding the information in your complaint. Thank you for bringing this matter to our attention."

Approximately six months later, on October 26, 2009, the borrower requested a hearing on the merits of her claims in front of the commissioner of the banking department. The commissioner denied the request.

The borrower then filed a motion for rehearing, which the commissioner reviewed and ultimately granted. Before the hearing, Countrywide moved to dismiss the claim based upon lack of jurisdiction, as well as the borrower's failure to timely seek rehearing after receiving the April 7, 2009 letter. The commissioner denied the motion.

After the hearing, the commissioner entered an order ruling that Countrywide had committed "an unfair or deceptive act or practice under RSA 358-A." The commissioner then ordered the following:

> (1) Countrywide shall reimburse [the borrower] for: (a) all monies paid by [the borrower] prior to and at closing, either to Countrywide or others . . . (b) all monies paid to Countrywide or others after closing . . . and (c) all reasonable legal fees expended by [the borrower] to secure this restitution. (2) Countrywide shall discharge the first mortgage and void the underlying mortgage note. (3) Countrywide shall payoff the underlying second mortgage note and obtain discharge of the second mortgage. (4) When [the above] are complied with, [the borrower] shall execute a quitclaim deed to Countrywide for the subject property.

The borrower and Countrywide both sought a rehearing in accordance with RSA 541:3 (2007). The commissioner denied both motions. The parties then cross-appealed to this court.

On appeal, Countrywide argues that: (1) the commissioner did not have jurisdiction to hear the borrower's claims; (2) the commissioner erred in granting the borrower's untimely motion for rehearing; (3) the commissioner improperly shifted the burden of proof; (4) the commissioner did not have the authority to award attorney's fees; and (5) the commissioner's order requiring deeding of the property to Countrywide is not consistent with restitution. In her cross-appeal, the borrower argues that the commissioner erred by ordering restitution that did not include damages provided under the Consumer Protection Act, and by not awarding restitution for her financial loss.

We will overturn the commissioner's order only for errors of law or if we are satisfied by a clear preponderance of the evidence that the order is unjust or unreasonable. See Appeal of Langenfeld, 160 N.H. 85, 89 (2010); RSA 541:13 (2007). The appealing party bears the burden of proof. Appeal of Langenfeld, 160 N.H. at 89.

Pursuant to RSA 541:3 and RSA 384:1-a (2011), a party has thirty days after any order or decision has been made by the banking department to file a motion for rehearing. Countrywide argues that the April 7, 2009 letter constitutes an "order or decision" denying the borrower's consumer protection complaint. RSA 541:3. Accordingly, Countrywide contends the

commissioner erred in granting the borrower's motion for rehearing filed on December 23, 2009, more than eight months after the borrower received the letter. The borrower argues that because the letter stated no action was being taken "at this time," it was not an "order or decision" denying her complaint, but rather was merely an informal status letter. In making this argument, the borrower primarily relies upon *New Hampshire Bankers Assoc. v. Nelson*, 113 N.H. 127 (1973).

In *Nelson*, we considered whether a letter from the commissioner constituted a "decision, order or ruling" that could be appealed to this court pursuant to RSA 384:1-a (2006) and RSA chapter 541. *Id.* at 129-31. At issue in *Nelson* was a complaint filed by the New Hampshire Banker's Association protesting certain actions of the New Hampshire Savings Bank. *Id.* at 127-28. The Banker's Association requested a hearing, and in response, the commissioner sent a letter stating that he had "investigated the facts and law" relevant to the plaintiff's claim and denied a hearing as unnecessary. *Id.* at 128-30. The letter also stated that the bank's allegedly unlawful actions did not violate New Hampshire banking statutes. *Id.*

The Banker's Association appealed to this court. *Id.* at 127-28. On appeal, the commissioner argued that the letter was not reviewable because it was "merely a gratuitous, informal response." *Id.* at 129. We explained that a letter is appealable when it "constitute[s] a final administrative disposition of the issue," and determined that "[t]he crux of the matter is the practical impact of . . . the [action]." *Id.* We held that the letter, which "finally foreclosed any further administrative proceeding on a motion for rehearing," was an appealable decision, order or ruling. *See id.* at 130-31.

Relying upon *Nelson*, the borrower argues that the letter is not an "order or decision" within the meaning of RSA 541:3 because it concludes with the phrase "at this time" and therefore does not constitute the agency's final word on the matter. However, the practical impact of the letter was to inform the borrower that the banking department had determined Countrywide did not violate the Consumer Protection Act, and that the department would not be taking any further action against Countrywide "at this time." In other words, the banking department definitively denied the borrower's complaint, absent a motion for rehearing. We agree with Countrywide that in this case, the letter constitutes an "order or decision" within the meaning of RSA 541:3. Because the borrower did not file a motion for rehearing within thirty days of the letter, any further action on her complaint was permanently foreclosed. *See* RSA 541:4 (2007); *In re Petition of McHale*, 120 N.H. 450, 451 (1980). The commis-

sioner should not have granted a hearing on the merits of the borrower's claims, and the award entered in her favor must be vacated.

*Vacated.*

DALIANIS, C.J., and HICKS, CONBOY and LYNN, JJ., concurred.