NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit Court – Manchester Family Division
No. 2014-457


IN THE MATTER OF MARY E. SHEYS AND ERIC BLACKBURN

Argued:  May 13, 2015
Opinion Issued:  July 15, 2015


Bossie & Wilson, PLLC, of Manchester (Jon N. Strasburger on the brief and orally), for the petitioner.


Michael Bedard, of Concord, by brief and orally, for the respondent.


DALIANIS, C.J.  The respondent, Eric Blackburn, appeals an order of the Circuit Court (Carbon, J.) granting the motion to dismiss filed by the petitioner, Mary E. Sheys, on the ground that the court lacked exclusive, continuing jurisdiction over the parties' post-divorce parenting matters.  On appeal, the respondent argues that the trial court's order is contrary to RSA 458-A:13, I (Supp. 2014), a provision of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), see RSA ch. 458-A (Supp. 2014).  Because we agree with the respondent, we reverse and remand.

The record contains the following facts.  The parties were married in August 2005 and were divorced by a New Hampshire court in 2009.  When they divorced, both parties lived and worked in New Hampshire.

The parties have two children, one born in 2006 and the other in 2007. The parenting plan entered with their divorce decree gave the parties joint decision-making responsibility for the children, who resided primarily with the petitioner. The respondent was awarded parenting time on two afternoons during the school week, every other weekend, and for two non-consecutive weeks during the summer.

In January 2013, the petitioner notified the respondent that she had to relocate from Manchester to Natick, Massachusetts, because she had been unemployed since November 2012 and had obtained a new job in Natick. The petitioner relocated with the children to Natick in February 2013.

After the petitioner moved to Natick, the respondent filed a motion in which he argued that he should be awarded primary residential responsibility for the children and that the petitioner should be found in contempt for having relocated in violation of the parties' parenting plan. In April 2013, the trial court denied this relief, finding that although the petitioner did not provide the respondent with the 60-day notice required by the parties' parenting plan, she provided him "at least 40-45 days" notice before relocating, which afforded him "ample time to . . . request . . . a hearing as provided by statute." The court entered a new parenting plan, pursuant to which the parties again had joint decision-making responsibility for the children, who again were to reside primarily with the petitioner. The respondent was awarded parenting time on alternate weekends, any time he was in the Natick area, and at other times as agreed by the parties. He was also awarded parenting time for two non-consecutive weeks each summer, five days during April vacation in even years, and five days during February vacation in odd years, unless the parties otherwise agreed.

In December 2013, the respondent requested that the court modify the parties' parenting plan and find the petitioner in contempt. The respondent's contempt motion was scheduled to be heard on February 19, 2014. On February 7, 2014, the petitioner filed a motion to dismiss the pending proceedings in New Hampshire because she and the children had been Massachusetts residents for one year and because she had a motion pending in a Massachusetts court to modify the parties' divorce decree and parenting plan. Following a hearing, the New Hampshire court granted the petitioner's motion to dismiss, reasoning that it was "appropriate for the Court to decline continuing jurisdiction over this matter" because "[t]he [p]etitioner and the children no longer have a significant connection with the State of New Hampshire." See RSA 458-A:13, I(a). The respondent unsuccessfully moved for reconsideration, and this appeal followed.

On appeal, the respondent argues that the trial court erred when it concluded that the children lacked a significant connection with New Hampshire. To address this argument, we must interpret the UCCJEA. Our

2

review of the trial court's statutory interpretation is <u>de novo</u>. See <u>In the Matter of Yaman & Yaman</u>, 167 N.H. 82, 86 (2014). When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. <u>Id</u>. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. <u>Id</u>. When the language of a statute is unambiguous, we do not look beyond it for further indications of legislative intent. <u>Id</u>.

Under the UCCJEA, once a court of this state has issued an initial custody order or has modified an initial order, the court has exclusive, continuing jurisdiction over the matter until:

> (a) A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have <u>a significant connection</u> with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

> (b) A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

RSA 458-A:13, I (emphasis added); <u>see</u> <u>Yaman</u>, 167 N.H. at 87-89 (providing an overview of the UCCJEA).

The UCCJEA does not define the phrase "significant connection." However, the official comments to the UCCJEA explain that, pursuant to this provision, "even if the child has acquired a new home State, the original decree State retains exclusive, continuing jurisdiction, so long as the general requisites of the 'substantial connection' jurisdiction provisions of Section 201 [of the UCCJEA] are met." Unif. Child Custody Jurisdiction & Enforcement Act § 202, cmt. 1, 9 Part IA U.L.A. 674 (1999); <u>see</u> RSA 458-A:12, I(b) (providing that a court may exercise jurisdiction to issue an initial custody order if no other state is the child's home state or the home state has declined jurisdiction, and the child and at least one parent has a significant connection to the state "other than mere physical presence" and substantial evidence concerning the child is available in the state). The comments further explain that "[i]f the relationship between the child and the person remaining in the State with exclusive, continuing jurisdiction becomes so attenuated that the court could no longer find significant connections and substantial evidence, jurisdiction would no longer exist." Unif. Child Custody Jurisdiction & Enforcement Act § 202, cmt. 1, 9 Part IA U.L.A. 674 (1999).

A majority of jurisdictions have concluded that a child has a "significant connection" with a state when one parent resides and "exercises at least some

parenting time" there. White v. Harrison-White, 760 N.W.2d 691, 697 (Mich. Ct. App. 2008); see Uttley v. Bobo, 242 S.W.3d 638, 640-41 (Ark. Ct. App. 2006) (children had sufficient contacts with Arkansas for court to retain exclusive, continuing jurisdiction when father lived in Arkansas and children visited him there); Fish v. Fish, 596 S.E.2d 654, 656 (Ga. Ct. App. 2004) (holding that Georgia court had continuing jurisdiction when father lived in Georgia and children visited him there at least six times during the year); Ruth v. Ruth, 83 P.3d 1248, 1253-54 (Kan. Ct. App. 2004) (concluding that Kansas court had exclusive, continuing jurisdiction when father continued to live in Kansas and children, who had relocated to Missouri, visited Kansas two weekends each month and eight weeks during the summer); In re Forlenza, 140 S.W.3d 373, 377 (Tex. 2004) (concluding that "[b]ecause the record establishes that the children visited Texas on a number of occasions and maintained a close relationship with their mother and other relatives residing in Texas, . . . the children have a significant connection with Texas sufficient to support the trial court's exclusive continuing jurisdiction over the modification proceedings"); Prickett v. Prickett, 167 P.3d 661, 663-64 (Wyo. 2007) (court retained exclusive, continuing jurisdiction pursuant to UCCJEA when father still lived in Wyoming and visited with children there).

We join the majority of jurisdictions that have considered the issue and hold that a child has a "significant connection" with New Hampshire when one parent still resides here and exercises more than de minimis parenting time here. In this case, the petitioner concedes that the respondent exercises his parenting time with the children in New Hampshire on alternating weekends, certain holidays, and for some extended periods in the summer and that he has relatives remaining in New Hampshire. Under these circumstances, we hold, as a matter of law, that the children have a significant connection with New Hampshire sufficient to support the trial court's exclusive, continuing jurisdiction over these proceedings.

The petitioner urges us to affirm the trial court on the alternate ground that New Hampshire is an inconvenient forum pursuant to RSA 458-A:18. Although she agrees that the trial court "did not use the term 'inconvenient forum' in its order," she contends that "given the testimony at the . . . hearing and the facts cited in the trial court's order, it is clear that the trial court made that determination."

The interpretation of a court order is a question of law, which we review de novo. Appeal of Langenfeld, 160 N.H. 85, 89 (2010). In construing a court order, we look to the plain meaning of the words used in the document. Id. We construe subsidiary clauses so as not to conflict with the primary purpose of the trial court's decree. Id. As a general matter, a court decree or judgment is to be construed with reference to the issues it was meant to decide. Id.

4

Here, considering the petitioner's motion to dismiss, the trial court's order, the respondent's motion to reconsider, the petitioner's objection thereto, and the parties' arguments at the motion hearing, it is evident that the only issue the court was asked to decide was whether it retained exclusive, continuing jurisdiction over this matter pursuant to RSA 458-A:13. The court was not asked to decide, and did not decide, whether New Hampshire is an inconvenient forum under RSA 458-A:18. Accordingly, we decline the petitioner's invitation to affirm the trial court's decision on this alternate ground.

We likewise decline her invitation to determine, in the first instance, whether New Hampshire is an inconvenient forum pursuant to RSA 458-A:18. "When, as in this case, a discretionary decision is at issue and the trial court has not exercised that discretion, we may sustain the trial court's ruling on a ground upon which it did not rely only if there is only one way the trial court could have ruled as a matter of law." State v. Hayward, 166 N.H. 575, 583 (2014) (quotation omitted). We are unable to conclude on the record before us that there was only one way that the trial court could have ruled had it been asked to decide whether New Hampshire is an inconvenient forum pursuant to RSA 458-A:18. Under those circumstances, we decline to affirm the trial court's decision on the ground that the court reached the right result for the wrong reason. See id. at 584.

Reversed and remanded.

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

5